640 A.2d 1309

COMMONWEALTH of Pennsylvania, Appellee,

v.

Ray GENTILE, Jr., Appellant.

Superior Court of Pennsylvania.

Argued Jan. 19, 1994.

Filed March 31, 1994.

Reargument Denied May 26, 1994.

Joseph P. Green, Jr., West Chester, for appellant.

Nicholas J. Casenta, Jr., Asst. Dist. Atty., West Chester, for Com., appellee.

Before WIEAND, HUDOCK and SAYLOR, JJ.

SAYLOR, Judge.

This is a direct appeal from the judgment of sentence of the Court of Common Pleas of Chester County for obstructing the administration of law or other governmental functions, 18 Pa.C.S.A. § 5101. We affirm.

We adopt the trial court's summary of the facts, as follows:

On August 28, 1990, a speeding citation was issued to one Andrew Kramer. Lester Thomas, the chief of the Parkesburg Borough Police, was subsequently approached by [Appellant,] District Justice Gentile about the ticket. [Appellant] asked "if there was anything we could do about the citation" in light of the fact that Mr. Kramer's family had done the borough a favor on a previous occasion. (N.T. 11–21–91 at 5). On September 2nd or 3rd, [Appellant] approached Chief Thomas again and asked him whether or not he had spoken with the officer who issued the citation, but Chief Thomas had not. [Appellant] approached Chief

Thomas about the ticket yet again several days later. Finally, on September 10, there was a "heated conversation" between the two wherein [Appellant] expressed his desire that local drivers be given "special consideration" regarding speeding tickets. (N.T. at 7). It was after this conversation that Chief Thomas agreed, under pressure, to issue Mr. Kramer a new citation at a reduced speed. *Ibid.*

At Appellant's subsequent jury trial, the Commonwealth presented the testimony of Chief Thomas. During the cross-examination of Chief Thomas, defense counsel requested permission to cross-examine the chief regarding his potential bias, interest or motive arising from an alleged criminal investigation of his actions in signing a citation on behalf of another officer, and regarding any assurances he may have been given by the prosecutor in connection with his testimony. The trial court refused to permit such cross-examination, holding the line of questioning "too tenuous." (N.T. 11/21/91, p. 47). Defense counsel also requested permission to cross-examine Chief Thomas regarding his alleged fear of losing his employment if he did not perform well in the prosecution of Appellant. Again, the trial court denied this request. Appellant was then convicted of obstructing administration of law or other governmental functions, and received a sentence of eighteen months probation, plus a $5,000.00 fine and the costs of prosecution. This appeal followed.

Appellant raises three issues for our review:

1. Whether the evidence was sufficient to sustain the verdict on the charge of obstructing the administration of law, where the only breach of duty proved was an alleged violation of the Code of Conduct for District Justices?

2. Whether the trial court erred in refusing to permit cross-examination concerning Chief Thomas' bias, interest and motive arising from his fear of prosecution for forgery and arising from any assurances he may have been given by the prosecutor in connection with his testimony?

3. Whether the trial court erred in refusing to permit cross-examination concerning Chief Thomas' bias, interest

and motive arising from his fear of losing his employment if he did not perform well in the prosecution of Appellant?

■ In evaluating Appellant's claim regarding the sufficiency of the evidence, we must decide:

[w]hether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to find every element of the crime beyond a reasonable doubt . . .

*Commonwealth v. Harper,* 485 Pa. 572, 576, 403 A.2d 536, 538 (1979).

Section 5101 of the Crimes Code, 18 Pa.C.S.A. § 101, et seq., defines obstructing administration of law or other governmental function as the intentional obstruction, impairment or perversion of the administration of law by "force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act . . ." *Id.* Thus, the crime consists of two elements: 1) an intent to obstruct the administration of law; and 2) an act of "affirmative interference with governmental functions." *Id.*

The evidence on the record clearly demonstrates that Appellant possessed the requisite intent required by section 5101; section 5101 includes "intentional, albeit unsuccessful, attempts to influence, obstruct, or delay the administration of law." *Commonwealth v. Trolene,* 263 Pa.Super. 263, 270, 397 A.2d 1200, 1201 (1979). Thus, in this case, the fact that Appellant approached Chief Thomas on four occasions and asked him to rewrite the speeding ticket is clear evidence of Appellant's intent to obstruct the administration of law.

■ In regard to the second element of the crime, Appellant argues that the Commonwealth failed to prove that he committed any prohibited act, as the statute requires. Furthermore, Appellant claims that the only "breach of duty" that he committed was his engaging in an ex parte conversation with the chief of police, in violation of the Rules of Conduct for District Justices. Because such Codes do not have the force of substantive law, "violations of these Codes are not a proper

subject for consideration of the lower courts to impose punishment for . . . judicial misconduct," *Reilly by Reilly v. SEPTA,* 507 Pa. 204, 219–220, 489 A.2d 1291, 1299 (1985); *see also, Matter of Chiovero,* 524 Pa. 181, 570 A.2d 57 (1990). Therefore, Appellant claims that absent any affirmative interference on his part, there is insufficient evidence to establish a violation of section 5101.

According to section 5101, however, breaches of official duty are included within the types of conduct described as "affirmative interference[s] with governmental functions." 18 Pa. C.S.A. § 5101, *supra.* In the instant case, the testimony at trial established the fact that Appellant approached Chief Thomas with the intent to have the chief alter the Kramer citation, and that the citation was in fact altered pursuant to Appellant's request. The testimony of Chief Thomas established that Appellant "felt that . . . local people should receive consideration and be written under 3111 of the Vehicle Code, which is obedience to traffic signs," rather than the section of the Vehicle Code which pertains to speeding. (N.T. 11/21/91, p. 8). Appellant informed Chief Thomas that if he did not "go along with" Appellant's wishes on any type of case, Appellant would "have the defendant called for a hearing and find him not guilty." (*Id.,* pp. 9–10). Additionally, Chief Thomas testified that he "felt pressured" to comply with Appellant's wishes regarding the speeding citation (*Id.,* p. 8). Furthermore, the trial testimony of other witnesses, such as Detective Daniels and Philip Kramer, corroborated Chief Thomas' testimony concerning the essential elements of the crime.

Based upon this testimony, we find that the jury could have reasonably concluded that Appellant had acted in breach of his official duty as a district justice to "strive to insure fair treatment toward every individual who appears before him . . . [and] also present the appearance of fairness and probity in his behavior as a judicial officer." *In re Franciscus,* 471 Pa. 53, 62, 369 A.2d 1190, 1195, *cert. denied* 434 U.S. 870, 98 S.Ct. 212, 54 L.Ed.2d 148, (1977).

"[T]he trier of fact, while passing upon the credibility of witnesses . . . is free to believe all, part, or none of the

evidence." *Commonwealth v. Griscavage,* 512 Pa. 540, 543, 517 A.2d 1256, 1257 (1986). Here, the jury found the testimony establishing the elements of the crime to be credible, and we will not disturb that finding on appeal. Accordingly, we hold that the evidence adduced at trial was sufficient to sustain Appellant's conviction.

█ We now turn to the issues raised by Appellant concerning the trial court's refusal to permit impeachment of Chief Thomas on cross-examination concerning his alleged bias, interest or motive. Appellant, citing *Commonwealth v. Evans,* 511 Pa. 214, 512 A.2d 626 (1986) and *Commonwealth v. Rhodes,* 405 Pa.Super. 570, 592 A.2d 1360 (1991),[1] contends that a reasonable juror could have concluded that Chief Thomas' testimony was based upon his hope for favorable treatment in connection with potential forgery charges which could have been brought against him, and that therefore, the defense should have been permitted to place these "facts" before the jury and allow the jury to decide whether such facts created an interest or motive. Appellant further contends that the trial court should have permitted cross-examination of Chief Thomas concerning his fear of losing his police employment if he did not perform to the district attorney's satisfaction.

█ The scope and limits of cross-examination are within the trial court's sound discretion and will not be reversed absent a clear abuse of that discretion, or an error of law. *Commonwealth v. Lane,* 492 Pa. 544, 546, 424 A.2d 1325, 1326 (1981), citing *Commonwealth v. Greene,* 469 Pa. 399, 404, 366 A.2d 234, 236 (1976). Generally, evidence of interest or bias on the part of a witness is admissible and constitutes a proper subject for cross-examination. *Commonwealth v. Robinson,* 507 Pa. 522, 491 A.2d 107 (1985). It is well-settled law that cross-examination directed toward revealing possible bias, interest or motive of a witness in testifying against the defendant is " 'always relevant as discrediting the witness and affecting the weight of his testimony.' " *Commonwealth v.*

---

**1.** These cases state that the issue of whether there was any inducement for a witness to testify is an issue of credibility to be resolved by the jury, not by the trial court. *Id.*

*Sullivan,* 485 Pa. 392, 395, 402 A.2d 1019, 1020 (1979), citing *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1973) (citation omitted). Indeed, this court observed in *Commonwealth v. Rhodes,* 405 Pa.Super. 570, 592 A.2d 1360 (1991) that the right of an individual to confront his accuser is guaranteed by Article I, Section 9 of the Pennsylvania Constitution. Furthermore, the Pennsylvania Supreme Court, in *Commonwealth v. Evans,* 511 Pa. 214, 512 A.2d 626 (1986), has stated:

> ... whenever a prosecution witness may be biased in favor of the prosecution because of outstanding criminal charges or because of any non-final criminal disposition against him within the same jurisdiction, that possible bias, in fairness, must be made known to the jury. Even if the prosecutor has made no promises, either on the present case or on other pending criminal matters, the witness may hope for favorable treatment from the prosecutor if the witness presently testifies in a way that is helpful to the prosecution. And if that possibility exists, the jury should know about it.

*Id.* at 224–225, 512 A.2d at 631–632.

■ Furthermore, it is the province of the jury, as the finder of fact, to resolve the issue of the witness' credibility after such impeachment has been permitted. *Commonwealth v. Seese,* 512 Pa. 439, 517 A.2d 920 (1986). "It is not for the court to determine whether the cross-examination for bias would affect the jury's determination of the case." *Commonwealth v. Evans,* 511 Pa. 214, 225, 512 A.2d 626, 632 (1986). Thus, the jury is the final arbiter of the witness' testimony.

The Pennsylvania Supreme Court further discussed the importance of permitting cross-examination regarding bias in *Commonwealth v. Birch,* 532 Pa. 563, 566, 616 A.2d 977, 978 (1992), noting that:

> ... [i]t is particularly important that, where the determination of a defendant's guilt or innocence is dependent upon the credibility of a prosecution witness, an adequate oppor-

tunity be afforded to demonstrate through cross-examination that the witness is biased.

*Id.*

In this case, the trial court held that because there were neither open criminal charges nor an active investigation pending against Chief Thomas at the time of his testimony, the reasonable potential for drawing the inference of bias, motive or interest on the part of Chief Thomas was weak, tenuous, and therefore, irrelevant. *See Commonwealth v. Culmer*, 413 Pa.Super. 203, 213–214, 604 A.2d 1090, 1095 (1992). Based upon the foregoing body of case law concerning this issue, we disagree with the trial court's ruling and find that Appellant's argument does possess some merit.

█ However, any error that was committed by the trial court is rendered harmless, *see, Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978), in light of the fact that the trial testimony of other witnesses, including Appellant, corroborated the essential elements of Chief Thomas' testimony. The testimony of Detective Daniels, Philip Kramer, and that of Appellant himself confirmed the portions of Chief Thomas' testimony pertaining to the elements of the crime. Philip Kramer testified that when he arrived at the district court and gave Appellant his son's citation, a new citation number was issued. (N.T. 11/21/91, pp. 32–33). Detective Daniels testified that during a non-custodial interview with Appellant, Appellant informed him that when he was contacted by Philip Kramer regarding "what he could do" about the citation, he advised Kramer that he would talk to the officer and "do what he could about it." (N.T. 11/22/91, p. 132). Detective Thomas further testified that during such interview, Appellant informed him that he contacted Chief Thomas and requested that the chief withdraw the speeding citation and substitute a citation for a violation of section 3111 of the Motor Vehicle Code, which pertains to failure to obey traffic control devices. *Id.* Detective Thomas also testified that Appellant stated during the interview that "he felt somewhat favorable towards Kramer" for having hired a former district justice in the past. (N.T. 11/22/91, p. 133).

Therefore, since the substance of Chief Thomas' testimony was confirmed by the testimony of other witnesses at trial, the result at trial would not have differed, and accordingly, the trial court's refusal to permit cross-examination to reveal the possible bias of Chief Thomas had no impact on the outcome of the case. *Commonwealth v. Culmer*, 413 Pa.Super. at 217, 604 A.2d at 1094. Accordingly, any error which the trial court committed in not permitting such impeachment was rendered harmless.

Judgment of sentence affirmed.

WIEAND, J., files a concurring and dissenting opinion.

WIEAND, Judge, concurring and dissenting.

I concur in the majority's determination that sufficient evidence was presented to sustain appellant's conviction for obstructing the administration of law or other governmental function. I find no merit in appellant's contention that the "breach of official duty" forming the basis for his prosecution under section 5101 of the Crimes Code must in itself constitute a criminal act. A breach of official duty becomes criminal under section 5101 when it is undertaken intentionally "with the purpose and effect of obstructing a governmental function." Model Penal Code, § 242.1, Comment at p. 206. In the instant case, I am satisfied that the jury could have found that appellant breached his duty as a district justice to impartially administer justice by exerting undue influence upon Chief Thomas to provide favorable treatment regarding the traffic citation which had been issued to Andrew Kramer.

I also agree with the majority's determination that the trial court erred when it refused to permit appellant to cross-examine Chief Thomas regarding his fear of prosecution or loss of employment stemming from his own involvement in signing the name of another officer on the substituted citation charging Andrew Kramer with a lesser offense. Such cross-examination would have been directly relevant to exploring the potential bias, interest or motive of Chief Thomas in testifying against appellant. Upon review of the record, how-

ever, I am unable to agree with the majority that this error was harmless. I cannot conclude, beyond a reasonable doubt, that the result of appellant's trial would not have been different if the trial court had not improperly limited the cross-examination of Chief Thomas. Therefore, I would reverse the judgment of sentence and remand for a new trial.