**In re District Justice Raymond L. GENTILE, Jr.**

### No. 5 JD 94.

Court of Judicial Discipline of Pennsylvania.

Nov. 23, 1994.
Publication Ordered Jan. 27, 1995.

▬▬▬▬▬▬▬

Before McCLOSKEY, President Judge, and BURNS, DePAUL, McGINLEY, DONOHUE, CASSEBAUM, JOHNSON and MAGARO, JJ.

### ORDER

PER CURIAM.

The Court has been unable to garner a majority vote required by Article V, Section 18(b)(4) of the Constitution of Pennsylvania, in order to take action on the Petition to Implement Automatic Forfeiture of Judicial Office filed July 11, 1994, by the Judicial Conduct Board. Accordingly, the Petition is hereby *DISMISSED*, without prejudice to the right of the Judicial Conduct Board to file formal charges, pursuant to Article V, Section 18 of the Constitution, against the respondent herein, Raymond L. Gentile, Jr., subject to the procedural rules of this Court and the Constitutional safeguards provided by Article V, Section 18(a) and (b).

Respondent's request for a stay of this matter, contained in Respondent's Answer to Petition filed July 26, 1994, is hereby *DISMISSED AS MOOT*.

OPINION IN SUPPORT OF REMOVAL FROM OFFICE BY JOHNSON, Judge.

The Judicial Conduct Board (the Board) has filed a Petition to Implement Automatic Forfeiture of Judicial Office. The Board requests this Court to declare that District

---

Justice Raymond L. Gentile, Jr. (Gentile) has forfeited his judicial office as of February 19, 1993, and is thereafter ineligible for judicial office. Based upon the facts averred in the Petition and its Exhibits, and following careful review of the Petition, Respondent's Answer, and the briefs of the parties, along with consideration of the oral argument, I conclude that the provisions of the Pennsylvania Constitution relating to automatic forfeiture of judicial office have been met. Accordingly, I would grant the prayer for forfeiture of judicial office.

## I.

Gentile was elected to the office of district justice for magisterial district No. 15–3–07 in Chester County on November 18, 1989. He assumed office for a six-year term, on January 1, 1990. On August 28, 1990, a speeding citation was issued to Andrew Kramer. Gentile subsequently approached the Chief of Police of Parkesburg Borough to inquire about the possibility of "doing something" about the citation. Gentile was charged with multiple counts of official oppression and obstructing the administration of law or other governmental functions. On November 27, 1991, a jury convicted Gentile of one count of obstructing the administration of law, 18 Pa. C.S. § 5101. On February 19, 1993, the Honorable Robert J. Shenkin sentenced Gentile to serve eighteen months' probation, imposed a $5,000.00 fine, and ordered Gentile to pay the costs of prosecution. Gentile pursued a timely appeal in the Superior Court of Pennsylvania.

On May 6, 1993, while that appeal was pending, the Judicial Inquiry and Review Board (J.I.R.B.) filed a Petition to Implement Automatic Forfeiture of Judicial Office in the Supreme Court of Pennsylvania, pursuant to Article V, Section 18(*l*) of the Pennsylvania Constitution. This was in accord with the practice that had been developed by J.I.R.B. On December 15, 1993, the Supreme Court entered a Rule to Show Cause why J.I.R.B.'s petition should not be granted.

The Superior Court affirmed Gentile's conviction on March 31, 1994, and denied reargument on May 26, 1994. *Commonwealth v. Gentile*, 433 Pa.Super. 381, 640 A.2d 1309 (1994). On May 6, 1994, subsequent to the approval of certain constitutional amendments relating to judicial discipline on May 18, 1993, by the Pennsylvania electorate, the Supreme Court entered an order discharging its Rule to Show Cause "without prejudice to the Judicial Conduct Board to proceed pursuant to Section 18 of Article V of [the] Pennsylvania Constitution." The Supreme Court's order referenced § 24(a) of the Schedule to Pennsylvania Constitution's Article V, which contains provisions relating to the termination of J.I.R.B. and the transfer of pending proceedings to the Board. The present petition filed by the Board followed

## II.

Preliminarily, we must consider issues framed in the Petition and Answer relating to this Court's jurisdiction to entertain the Petition. Gentile argues that the 1993 amendments to Article V of the Pennsylvania Constitution were not intended to operate retroactively. He further argues that the statutory jurisdiction of this Court "was not intended retroactively to apply to pending petitions for immediate forfeiture." Finally, he argues that the retroactive exercise of jurisdiction to adjudicate the pending request for forfeiture would violate constitutional proscriptions against the enactment of ex post facto laws. After considering the arguments advanced by Gentile, I would reject these contentions.

The automatic forfeiture provision in effect at the time Gentile committed the acts for which he was convicted provided:

> (1) A justice, judge or justice of the peace convicted of misbehavior in office by a court, disbarred as a member of the bar of the Supreme Court or removed under this section eighteen shall forfeit automatically his judicial office and thereafter be ineligible for judicial office.

Pa. Const. art. V, § 18(*l*) (repealed).

The provision contained in the Amendment of 1993, which we are asked to apply in this case, sets forth:

> § 18. **Suspension, removal, discipline and other sanctions**
>
> . . . .

(d) A justice, judge or justice of the peace shall be subject to disciplinary action pursuant to this section as follows:

. . . .

(3) A justice, judge or justice of the peace convicted of misbehavior in office by a court, disbarred as a member of the bar of the Supreme Court or removed under this section shall forfeit automatically his judicial office and thereafter be ineligible for judicial office.

Pa. Const. art. V, § 18(d)(3).

The two provisions are virtually identical. The only difference in the content of subsection (d)(3) under the 1993 amendment is the elimination of the word "eighteen" following the word "section". The deletion of this one word does not affect the substance of the provision in the slightest. At the time Gentile committed these acts and was subsequently convicted, he was subject to automatic forfeiture of office if "convicted of misbehavior in office by a court." *Id.*, § 18(*l*) (repealed). When the Rule to Show Cause was discharged by the Supreme Court and the Board thereafter filed its Petition before this Court, Gentile was subject to automatic forfeiture of office if "convicted of misbehavior in office by a court." *Id.*, § 18(d)(3).

The application of art. V, § 18(d)(3) to Gentile does not implicate issues of retroactivity. While there is a presumption against the retroactive application of statutes affecting substantive rights, a law is only retroactive in its application when it relates back and gives a previous transaction a legal effect different from that which it had under the law in effect when it transpired. 1 Pa.C.S. § 1926 (Purdon Supp.1994); *McMahon v. McMahon,* 417 Pa.Super. 592, 600–01, 612 A.2d 1360, 1364 (1992); *R & P Services, Inc. v. Commonwealth Department of Revenue,* 116 Pa.Cmwlth. 230, 235, 541 A.2d 432, 434 (1988). Substantive rights are those affected when the application of the statute imposes new legal burdens on past transactions or occurrences. *McMahon, supra,* 417 Pa.Super. at 601, 612 A.2d at 1364; *Department of Labor and Industry, Bureau of Employment Security v. Pennsylvania Engineering Corp.,* 54 Pa.Cmwlth. 376, 380, 421 A.2d 521, 523 (1980).

When applied to a condition existing on its effective date, even though the condition results from events which occurred prior to that date, a statute is not retroactively construed where, as here, no vested right or contractual obligation is involved. *R & P Services, supra,* 116 Pa.Cmwlth. at 235, 541 A.2d at 434; and *McMahon, supra,* 417 Pa.Super. at 601, 612 A.2d at 1364, both citing *Creighan v. City of Pittsburgh,* 389 Pa. 569, 575, 132 A.2d 867, 871 (1957). Section 18(d)(3), in replacing the former § 18(*l*), neither adds to nor subtracts from any substantive rights of Gentile or any other judicial officer subject to its provisions. Therefore, the section may properly be applied in response to petitions filed by the Board seeking a declaration of automatic forfeiture of judicial office. *McMahon, supra.* While § 18(d)(3) was enacted in 1993, it was virtually a verbatim restatement of the existing constitutional provision formerly set forth in § 18(*l*). Thus, by consideration and application of § 18(d)(3) to the petition now before us, I arrive at the same result as if I were to apply the identical language found in former § 18(1). *Compare In re Dandridge,* 462 Pa. 67, 337 A.2d 885 (1975) (repeal of canons allegedly violated by judge could not prevent prosecution without interruption of judicial misconduct where new code censures the same conduct). I conclude that this portion of Gentile's argument on retroactivity is without merit.

### III.

For all of the reasons set forth above, Gentile's second contention relating to an alleged lack of legislative intent to permit "retroactive exercise of this Court's jurisdiction" must also be rejected.

### IV.

Gentile finally contends that the exercise of jurisdiction by this Court on this petition would violate the prohibition against ex post facto laws found in both the federal and state constitutions. He argues, in his brief

that the restrictions on respondent's right to review of his conduct by an elected judicial body, and by a tribunal empowered

concurrently to review the merits of his conviction, the gravity of his offense and the appropriate judicial discipline, is a sufficiently substantial change in respondent's substantive protections and rights to review as to constitute a violation of the ex post facto clauses.

Respondent's Memorandum of Law, filed August 18, 1994, at 11. I cannot agree.

The United States Supreme Court has defined the meaning of an ex post facto law as

> any statute which punishes as a crime an act previously committed, which was innocent when done, which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto.

*Collins v. Youngblood,* 497 U.S. 37, 42, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30, 39 (1990), citing *Beazell v. Ohio,* 269 U.S. 167, 169–70, 46 S.Ct. 68, 69, 70 L.Ed. 216, 217 (1925). The Pennsylvania Supreme Court has interpreted the virtually identical state constitutional prohibition consistently with the federal analysis. *See Commonwealth v. Young,* 536 Pa. 57, 65 n. 7, 637 A.2d 1313, 1317 n. 7 (1993).

The Board correctly points out that the constitutional prohibition of ex post facto laws applies only to penal statutes which disadvantage the offender affected by them. *Collins, supra,* 497 U.S. at 41, 110 S.Ct. at 2718, 111 L.Ed.2d at 38. Pennsylvania has not decided whether judicial disciplinary proceedings involving automatic forfeiture of judicial office are constrained by the ex post facto provision of either the state or federal constitutions. Several other states have concluded that since judicial disciplinary proceedings are neither criminal in nature nor penal in object, the ex post facto clause simply does not apply. *See and compare Matter of Marquardt,* 161 Ariz. 206, 778 P.2d 241 (1989); *Nicholson v. Judicial Retirement and Removal Commission,* 562 S.W.2d 306 (Ky.1978).

Nevertheless, we need not presently decide this question. Assuming, for purposes of this proceeding only, that the ex post facto clause is applicable, I am unable to find any relief for Gentile. In *Keiser v. Bell,* 332 F.Supp. 608 (E.D.Pa.1971), then-U.S. District Judge A. Leon Higginbotham, Jr., found an ex post facto claim to be without merit in a suit brought by a City of Philadelphia magistrate against the members of the Pennsylvania Supreme Court. The plaintiff sought the convening of a three-judge court and an injunction to restrain the enforcement of disciplinary proceedings against the magistrate brought pursuant to Article V, § 18 and Schedule to Article V, § 24 of the Pennsylvania Constitution. Judge Higginbotham concluded that, although the magistrate's removal from judicial office constituted punishment, there was no violation of the ex post facto laws where the change in Pennsylvania procedure for removal of judges from office did not materially alter substantive procedural protection.

Judge Higginbotham held that the removal from office, as a punishment, only violates the ex post facto laws if the punishment is retroactively increased or if less evidence is required to impose the punishment. In the present case, the adoption of the 1993 amendment does not increase the punishment because the automatic forfeiture provision is identical to the former provision. The only difference between the former constitutional provision and the section now in effect is the forum in which the proceeding is conducted. This is insufficient to give rise to an ex post facto claim. Therefore, as in *Keiser,* Gentile has no constitutional right to be tried or disciplined by the exact procedures that were in effect at the time of his misconduct. *Keiser,* at 624. *See also Office of Disciplinary Counsel v. Zdrok,* 538 Pa. 41, ——, 645 A.2d 830, 834 (1994). The claim is without merit.

**V.**

I also would expressly reject that portion of Gentile's final contention of an ex post facto violation which claims that there is a restriction on his right to review by an elected judicial body. He seemingly argues that present Article V, § 18(c)(2) can be read to limit the authority of the Supreme Court to

set aside a forfeiture directed by this Court, whereas prior to passage of the 1993 amendments, he had the opportunity for substantive review by the Supreme Court. Section 18(c)(2) provides, in its entirety:

(c) Decisions of the court shall be subject to review as follows:

. . . .

(2) On appeal, the Supreme Court or special tribunal shall review the record of the proceedings of the court as follows: on the law, the scope of review is plenary; on the facts, the scope of review is clearly erroneous; and, as to sanctions, the scope of review is whether the sanctions imposed were lawful. The Supreme Court or special tribunal may revise or reject an order of the court upon a determination that the order did not sustain this standard of review; otherwise, the Supreme Court or special tribunal shall affirm the order of the court.

Gentile cites no authority, nor am I aware of any, that would declare a right in a judicial officer to secure "complete judicial review by an elected judiciary." Even assuming such a right exists, I find nothing in this section of the Constitution that limits in any way the continuing power of review by an elected judiciary. I would decline to give this section the strained reading suggested by Gentile. I am prepared to leave to our Supreme Court any pronouncement as to the scope and effect of § 18(c)(2). *See* 42 Pa.C.S. § 725(2).

I would determine that Article V, § 18(d)(3) is properly applicable to the conduct at issue in this case, and this Court has jurisdiction to entertain the petition submitted by the Board.

## VI.

I now turn to the central issue in this case: Does the Petition to Implement Automatic Forfeiture of Judicial Office contain sufficient averments to meet the requirements for automatic forfeiture of judicial office pursuant to Article V, § 18(d)(3) of the Pennsylvania Constitution? In other words, has Gentile been convicted of misbehavior in office by a court, thus triggering the forfeiture of his position as district justice? I find the averments before us to be sufficient and conclude that the undisputed facts constitute misbehavior in office. Thus, I would grant the petition of the Board.

Gentile has been convicted of one count of obstructing the administration of law. 18 Pa.C.S. § 5101. That conviction, alone, is not sufficient to trigger the automatic forfeiture provision of Article V, § 18(d)(3). In determining whether Gentile's conviction constitutes a conviction of misbehavior in office, this Court should look to cases previously decided by our Supreme Court under the virtually identical, prior constitutional provision, Article V, § 18(*l*) (repealed).

In the first of four cases filed in the Supreme Court by J.I.R.B. under the former Article V, § 18(*l*), a federal mail fraud conviction was found *not* to constitute misbehavior in office. *In re Braig,* 527 Pa. 248, 590 A.2d 284 (1991). The Court there noted that "misbehavior in office" was a common law crime consisting of failure to perform a positive ministerial duty of the office or the performance of a discretionary duty with an improper or corrupt motive. *Id.* at 252, 590 A.2d at 286. It declared:

Our Constitution has long contained provisions specifying that civil officers "shall be removed on conviction of misbehavior in office or of any infamous crime." In the several cases where interpretation of these provisions came before the appellate courts, it was uniformly understood that the reference to "misbehavior in office" was to the criminal offense as defined at common law.

*Id.* (citations omitted).

The plurality in *Braig* went on to hold that the automatic forfeiture provision of then-§ 18(1) "applies where a judge has been convicted of a crime that satisfies the elements of the common law offense of misbehavior in office." *Id.* at 254, 590 A.2d at 287–88. This holding was prompted by the fact that the enactment of the Crimes Code in 1972 resulted in the abolishment of all common law crimes, 18 Pa.C.S. § 107(b), and eliminated the possibility of bringing a prosecution for the common law crime of "misbehavior in office." The *Braig* court concluded that, in

reaching a finding of misbehavior in office, the deciding body must insure that the record establishes beyond a reasonable doubt that the judge had engaged in conduct directly affecting the integrity of the office. *Id.* at 255, 590 A.2d at 288.

The *Braig,* J.I.R.B. sought to argue that Judge Braig was subject to automatic forfeiture of his judicial office for misbehavior in office because he had breached the constitutionally imposed duty of Article V, § 17, which provides that "judges shall not engage in any activity prohibited by law...." The Court rejected this reasoning, concluding that the breach of a *negative* duty, that is, a duty *not* to engage in certain conduct, was insufficient. *Id.* at 256, 590 A.2d at 288. Based upon its understanding of the cases where the violation of a statutory duty was identified as the equivalent of misbehavior in office, the Court determined that a positive duty, wherein the officeholder is required to perform a particular act or exercise a function of the office, in a particular way, is required. *Id.* Judge Braig's federal mail fraud conviction was not seen to have breached such a duty and, therefore, was found not to constitute misbehavior in office.

In another case, decided on the same day as *Braig,* the Supreme Court held that the factual allegations underlying the conviction of a senior judge for violating the Hobbs Act constituted misbehavior in office supporting imposition of the automatic forfeiture provision in Article V, § 18(*l*). *In re Cain,* 527 Pa. 260, 590 A.2d 291 (1991). The federal grand jury indictment charged the judge with accepting money from an attorney in two separate cases in exchange for action in criminal cases in which the attorney represented the defendants. The judge was found guilty of one count of violating the Hobbs Act. The Supreme Court had no difficulty in finding that the facts set forth in J.I.R.B.'s petition warranted application of the automatic forfeiture provision to Judge Cain. *Id.* at 265, 590 A.2d at 293.

Judge Cain did not dispute the characterization of his conviction under the Hobbs Act as "misbehavior in office by a court." For this reason, our Supreme Court did not pursue an analysis of the relationship between Cain's conviction under a federal statute and the necessity of showing the elements of the common law crime of misbehavior in office in order to support automatic forfeiture of office. Arguably, Cain's act of accepting money in exchange for action in criminal cases may not constitute breach of a *positive* duty, as set forth in *Braig.* Breach of a positive ministerial duty would have required that Judge Cain perform a particular act or exercise a function of his office in a particular way, contrary to an express legislative mandate. However, misbehavior in office also may result where a discretionary duty is performed with an improper or corrupt motive. *Braig,* 527 Pa. at 252, 590 A.2d at 286. On this basis, alone, Cain's removal from office is entirely supportable.

Relying on its analysis in *Braig,* the Supreme Court, in *In re Dalessandro,* 528 Pa. 240, 596 A.2d 798 (1991), concluded that a common pleas judge who had pleaded guilty and was subsequently convicted on two counts of attempted income tax evasion had not been "convicted of misbehavior in office" so as to require automatic forfeiture of office. Dalessandro's conduct in attempting to evade payment of his personal, federal income taxes involved neither a breach of a positive ministerial duty of his office *as common pleas judge* nor performance of a discretionary duty of his office *as judge* with an improper or corrupt motive.

In still another disciplinary case involving a request by J.I.R.B. for a declaration of automatic forfeiture of office, the Supreme Court made it clear that sufficient detail of the alleged misconduct must be presented in the record to support suspension, removal, or other discipline. *In re Scott,* 528 Pa. 206, 596 A.2d 150 (1991). J.I.R.B. filed its petition which included a certified copy of the criminal information setting forth the charges against District Justice Scott and certified copies of the sentencing orders. The only other item in the record was the respondent's petition for an extension of time. The only description of the district justice's conduct giving rise to the criminal charges was contained in the criminal information. The Supreme Court noted that

"Misbehavior in office" is a separate ground for forfeiture that was intended to encompass only those convictions for crimes involving misuse of the judicial office.

*Id.* at 209, 596 A.2d at 151.

The Court concluded, in the face of a petition that attached only the criminal information and sentencing orders, that the "sparse record presented to this Court is inadequate to sustain a determination that the Respondent has been convicted of 'misbehavior in office by a court.'" *Id.* In a concurring opinion, Mr. Chief Justice Nix agreed that "misbehavior in office" may not be applicable when a jurist commits a crime unrelated to the jurist's judicial responsibilities, but asserted that the use of judicial office to improperly intervene or importune in any legal proceeding with the intent of influencing the outcome for the benefit of one of the litigants therein would constitute "misbehavior in office." *Id.* at 210, 596 A.2d at 152. I do not find this view to be inconsistent with the standard set forth by the Court in *Braig, supra.*

These four cases, taken together, provide the standard to be applied in the case now before us.

My colleague, Judge Donohue, asserts that she cannot conclude that the electorate in 1993 attached to the phrase "misbehavior in office" the meaning of a common law crime which had been abolished with the enactment of the Crimes Code in 1973. Opinion, Donohue, J., at 2. However, we need not speculate as to the thoughts of the electorate in 1993. Our Supreme Court previously addressed this very issue and applied identical language found in art. V, § 18(*l*) (repealed) as set forth, above. In deciding *In re Braig, supra,* some eighteen years following the abolition of all common law crimes, our Supreme Court held

> that the automatic forfeiture provision of Article V, Section 18(1) applies where a judge has been convicted of a crime that satisfies the elements of the common law offense of misbehavior in office.

*Braig, supra,* 527 Pa. at 254, 590 A.2d at 287–88. Judge Donohue concludes, contrary to the clear holding in *Braig,* that automatic forfeiture based upon conviction of misbehavior in office "is not self-executing absent legislation defining the crime of 'misbehavior in office.'" Opinion, Donohue, J., at 3. Yet, in *Cain,* our Supreme Court removed Judge Cain from office in 1991, long after the adoption of the Crimes Code, under identical language then contained in Article V, Section 18(*l*) and without the additional legislation which Judge Donohue would require.

## VII.

I now summarize the principles to be applied in determining whether a judicial officer has been "convicted of misbehavior in office by a court."

The automatic forfeiture provision of Article V, § 18(d)(3) is triggered where a judge has been convicted of a crime that satisfies the elements of the common law offense of misbehavior in office. *Braig, supra.* The common law offense of misbehavior in office consists of either (a) failure to perform a positive ministerial duty of the office, or (b) performance of a discretionary duty with an improper or corrupt motive. *Commonwealth v. Hubbs (No. 2),* 137 Pa.Super. 244, 248, 8 A.2d 618, 620 (1939). The reason for requiring an improper or corrupt motive in the discharge of a discretionary duty is so that public officers will not be hampered in the performance of those duties by a fear of criminal prosecution for an error of judgment committed in good faith. *Id.* In reaching a finding of misbehavior in office, the deciding body must insure that the record establishes beyond a reasonable doubt that the judicial officer has engaged in conduct directly affecting the integrity of the office. *Braig,* 527 Pa. at 255, 590 A.2d at 288. Breach of a negative duty, that is, a duty not to engage in certain conduct, does not satisfy the elements of the common law crime. *Id.* Conduct, such as accepting money from an attorney representing a litigant, which is taken for the purpose of affecting the outcome in a criminal case, satisfies the requirement of performance of a discretionary duty with a corrupt motive. *In re Cain, supra.* Conduct which neither involves a breach of a positive ministerial duty nor performance of a discretionary duty with an improper or corrupt motive

will not support a petition for automatic forfeiture based on misbehavior in office. *In re Dalessandro, supra.* The petitioning body, now the Judicial Conduct Board, has the burden of including within its petition and exhibits sufficient allegations of fact to permit the deciding body to establish either (a) a breach of a positive ministerial duty or (b) performance of a discretionary duty with an improper or corrupt motive. *In re Scott, supra.*

## VIII.

Applying these principles, I now review the facts before us. Like Scott, Gentile was convicted of obstructing administration of law or other governmental function. 18 Pa. C.S. § 5101. Unlike the "sparse record presented to [the Supreme Court]" in *Scott,* 528 Pa. at 209, 596 A.2d at 151, we have before us a Petition that includes both the Opinion and Order of the Honorable Robert J. Shenkin denying post-trial motions, filed January 26, 1993, in the trial court and the Opinion of the Superior Court of Pennsylvania, filed March 31, 1994, affirming judgment of sentence. *Commonwealth v. Gentile,* 433 Pa.Super. 381, 640 A.2d 1309 (1994).

In his Answer to Petition to Implement Automatic Forfeiture of Judicial Office, Gentile does not deny the authenticity of the Opinions submitted as exhibits to the Board's Petition. I do not read Gentile's Answer as contesting any of the facts set forth in the Opinions of the Chester County Court of Common Pleas and the Superior Court. The prayer of Gentile's Answer to the request for declaration of automatic forfeiture is limited to a request for a stay of these proceedings pending disposition of his petition for allowance of appeal pending before our Supreme Court and argument and briefing on the constitutional questions. We, therefore, should examine those opinions to determine the facts surrounding Gentile's conviction.

Judge Shenkin set forth the facts in his Opinion filed January 26, 1993 as follows:

On August 28, 1990, a speeding citation was issued to one Andrew Kramer. Lester Thomas, the chief of the Parkesburg Borough Police, was subsequently approached by District Justice Gentile about the ticket. The defendant asked "if there was anything we could do about the citation" in light of the fact that Mr. Kramer's family had done the borough a favor on a previous occasion (N.T. 11–21–91 at 5). On September 2nd or 3rd, the defendant approached Chief Thomas again and asked him whether or not he had spoken with the officer who had issued the citation, but Chief Thomas had not. The defendant approached Chief Thomas about the ticket yet again several days later. Finally, on September 10, there was a "heated conversation" between the two wherein the defendant expressed his desire that local drivers be given "special consideration" regarding speeding tickets. (N.T. at 7). It was after this conversation that Chief Thomas agreed, under pressure, to issue Mr. Kramer a new citation at a reduced speed. Ibid. Chief Thomas testified that he felt pressured because of the defendant's threat to otherwise call speeding violators for a hearing and find them not guilty. (N.T. at 10).

Opinion, Shenkin, J., filed January 26, 1993, C.C.P. Chester County, No. 4529–90, at 3–4. This recitation of the facts was expressly adopted by the Superior Court. *See Gentile,* 433 Pa.Super. at 383–84, 640 A.2d at 1311. The Superior Court, as part of its record review, went on to assert:

In the instant case, the testimony at trial established the fact that [Gentile] approached Chief Thomas with the intent to have the chief alter the Kramer citation, and that the citation was in fact altered pursuant to [Gentile's] request. The testimony of Chief Thomas established that [Gentile] "felt that ... local people should receive consideration and be written under 3111 of the Vehicle Code, which is obedience to traffic signs," rather than the section of the Vehicle Code which pertains to speeding. (N.T. 11/21/91, p. 8). Appellant informed Chief Thomas that if he did not "go along with" [Gentile's] wishes on any type of case, [Gentile] would "have the defendant called for a hearing and find him not guilty." (Id., pp. 9–10). Additionally, Chief Thomas testified that he "felt pressured" to comply with [Gentile's] wishes

regarding the speeding citation (*Id.,* p. 8). Furthermore, the trial testimony of other witnesses, such as Detective Daniels and Philip Kramer, corroborated Chief Thomas' testimony concerning the essential elements of the crime.

*Id.* at 386, 640 A.2d at 1312.

In affirming Gentile's conviction and judgment of sentence, the Superior Court cited *In re Franciscus,* 471 Pa. 53, 62, 369 A.2d 1190, 1195 (1977), *cert. denied,* 434 U.S. 870, 98 S.Ct. 212, 54 L.Ed.2d 148. That case arose on a petition to vacate a state Supreme Court order suspending a district justice from office prior to a recommendation from the J.I.R.B. In upholding its inherent superintendency powers over the lower judiciary, the Court declared:

> A judge or justice of the peace in fulfilling his judicial function must not only strive to insure fair treatment toward every individual who appears before him, but he must also present the appearance of fairness and probity in his behavior as a judicial officer.

*Id.*

Arguably, the conduct of Gentile in the case before us may not be characterized as the breach of a positive statutory duty. At least the Board has not referred this Court to any express statutory provision that Gentile has violated. Nevertheless, the duty to decide summary cases, including alleged violations of the motor vehicle code, is clearly one of the duties possessed by district justices. 42 Pa.C.S. §§ 1513, 1515(a)(1). This is a duty which is exercised with discretion, relying on the factual evidence presented before the district justice in an open hearing. That discretion cannot be properly exercised until the facts have been presented for the acceptance or rejection by the district justice in open court.

The record before us demonstrates that Gentile sought to exercise or discharge that duty with an improper or corrupt motive. Rather than decide cases coming before him on the facts as they would present themselves, Gentile threatened the Chief of Police that, unless the chief would participate in the alteration of the Kramer citation to conform to Gentile's desires, Gentile would have Kramer brought before him for a hearing and find him not guilty.

In his appeal to the Superior Court, Gentile claimed that absent any affirmative interference on his part, there was insufficient evidence to establish a violation of 18 Pa.C.S. § 5101. The Superior Court was faced with established facts that Gentile had approached Chief Thomas with the intent to have the chief alter the Kramer citation, that Gentile threatened to call Kramer for a hearing and find him not guilty, that the chief felt pressured to comply with Gentile's demand regarding the alteration of the citation, and that the citation was altered. *Gentile,* 433 Pa.Super. at 386, 640 A.2d at 1312. The Court also considered the trial testimony of other witnesses who corroborated Chief Thomas' testimony concerning the elements of the crime. The Court concluded that this conduct satisfied any requirement for breach of an official duty as a district justice and rejected Gentile's argument that performance of a duty had not occurred. *Id.* I would reach the same conclusion here. The totality of Gentile's actions (a) in repeatedly requesting Chief Thomas to alter the citation, (b) in demanding, in a heated conversation with the chief, that local drivers be given special consideration, and (c) in threatening that he would have Kramer called for a hearing and found not guilty, satisfies the requirement for the performance of a discretionary duty with an improper or corrupt motive.

Superior Court Judge Donald E. Wieand, concurring in his colleague's determination that sufficient evidence was presented to sustain Gentile's conviction for obstructing the administration of law or other governmental function, noted that the jury could have found that Gentile "breached his duty as a district justice to impartially administer justice by exerting undue influence upon Chief Thomas to provide favorable treatment regarding the traffic citation which had been issued to Andrew Kramer." *Id.* at 390, 640 A.2d at 1314. The breach of this duty, and the manner in which he approached Chief Thomas, Detective Daniels, and others, confirms Gentile's performance of a discretionary duty with an improper or corrupt motive.

Judge Donohue finds that the factual record before this Court is insufficient to implement automatic forfeiture of office. I cannot agree. As set forth above, the Superior Court, following a careful review of the trial record, adopted the trial court's summary of the facts and determined that the evidence was sufficient to permit the jury to reasonably conclude that Gentile had acted in breach of his official duty as a district justice. *Id.* at 385, 640 A.2d at 1312. Judge Wieand agreed with this finding. *Id.* at 390, 640 A.2d at 1314. Further, once the elements of the common law offense of misbehavior in office have been established, as required by *Braig,* there is no requirement for a second evidentiary hearing.

## IX.

The facts are not in dispute in this proceeding. As in *In re Cain, supra,* Gentile does not dispute the characterization of his conviction. He merely asserts that this Court is without jurisdiction to receive and decide this petition, and that a declaration of automatic forfeiture should await the disposition of the pending petition for allowance of appeal in the Supreme Court.

Gentile's request for a stay should be denied. The constitutional provision calls for automatic forfeiture. The Act of August 14, 1963, P.L. 1048, § 1, provides in pertinent part:

§ 121. **Nolo contendere; guilty plea; conviction; sentence**

Any person, holding a public office in this Commonwealth, who . . . is convicted in a court of record . . . for any misdemeanor in office, shall forfeit his office, and the sentence imposed by the court shall include the direction for the removal from office of such person.

65 P.S. § 121 (Purdon Supp.1994). Section 3 of the 1963 Act goes on to provide:

§ 123. **Reinstatement**

In the event of a verdict or final judgment of not guilty, the official shall forthwith be reinstated in office.

65 P.S. § 123 (Purdon Supp.1994). When these sections are read in conjunction with the constitutional mandate contained in Article V, § 18(d)(3), there can be no doubt that both the legislature and the electorate on constitutional amendments intended that the forfeiture not be delayed beyond the date of conviction. Our obligation is to ascertain and effectuate the intention of the General Assembly as well as the intention of the people of this Commonwealth in adopting amendments to our Constitution. 1 Pa.C.S. 1921(a) (Purdon Supp.1994). The words of both the statute and the Constitution are clear and free from all ambiguity. *Id.* at (b). Those words may not be disregarded. *Id.* The legislature has already provided for that eventuality where the final judgment is "not guilty." 65 P.S. § 123. Further protection is neither required nor permitted by this Court.

The record is sufficient to permit the conclusion that Gentile's conduct evidences improper or corrupt motives in the performance of his discretionary duty to decide cases. The conviction under these facts satisfies the elements of the common law crime of "misbehavior in office." Under the analysis formulated by our Supreme Court in *Braig* and related cases, automatic forfeiture is required under Article V, § 18(d)(3).

The Board has requested a declaration that Gentile is automatically removed from his judicial office as of February 19, 1993, the date upon which Gentile was sentenced on his conviction at No. 4529-90, Criminal Action, in the Court of Common Pleas of Chester County, and thereafter is ineligible for judicial office. I have considered the issues regarding alleged retroactivity and have found them all to be without merit. The constitutional provision is both clear and mandatory. I, therefore, would grant the prayer of the Board's petition and would deny Respondent's request for a stay pending disposition of the pending Petition for Allowance of Appeal.

BURNS and CASSEBAUM, JJ., join this Opinion in Support of Removal from Office.

MEMORANDUM IN SUPPORT OF GRANTING THE PETITION OF REMOVAL BY McCLOSKEY, President Judge.

I agree that the petition to implement automatic forfeiture of judicial office should

be granted. I cannot join in the reasoning offered by Judge Johnson, however, because I do not believe that this Court should continue to apply the *Braig* line of cases which analyze petitions for automatic forfeiture based on the elements of the common law crime of misbehavior in office. Rather, I believe that the 1993 constitutional amendment must be construed as reflecting the state of the law at the time of its adoption, at which time the legislature must have been aware that the common law crime of misbehavior in office had been abolished.

By continuing the use of the term after the abolishment of the common law crime, I believe that the intended meaning of the term "misbehavior in office" is to include a class of crimes rather than a specific crime in the same manner in which the term "infamous crime" has been interpreted under Article VII, Section 6 of the Pennsylvania Constitution. Infamous crimes are those "... which involve the charge of falsehood, and affect the public administration of justice." *In re Greenberg*, 442 Pa. 411, 417, 280 A.2d 370, 372 (1971) (quoting *Commonwealth v. Shaver*, 3 Watts & Serg. 338, 342 (1842)); *Braig v. State Employees' Retirement Board*, 138 Pa. Cmwlth. 124, 587 A.2d 371, 376 (1991), *petition for allowance of appeal denied*, 530 Pa. 649, 607 A.2d 258 (1992).

Viewing the term "misbehavior in office" in that light, I would conclude that any conviction of a judicial officer which corrupts or abuses the judicial office constitutes misbehavior in office as a matter of law, and is grounds for automatic forfeiture pursuant to Article V, Section 18(d)(3).

OPINION IN SUPPORT OF DISMISSAL OF PETITION FOR AUTOMATIC FORFEITURE BY DONOHUE, Judge.

On May 18, 1993, the electorate of this Commonwealth amended Article V, Section 18 of the Pennsylvania Constitution, thereby designing a new scheme for judicial discipline. At the time of the Amendment, there did not exist in Pennsylvania the crime of "misbehavior in office." Consequently, I do not believe that District Justice Gentile must automatically forfeit his office as requested by the Judicial Conduct Board.

The prior version of Article V, Section 18 was adopted in 1968. At that time, this Commonwealth recognized the common-law crime of "misbehavior in office," *See*, e.g., *In re Braig*, 527 Pa. 248, 590 A.2d 284 (1991); *Commonwealth v. Peoples*, 345 Pa. 576, 28 A.2d 792 (1942). Accordingly, the constitutional language could be interpreted literally, and a judicial officer charged, tried and convicted of the common-law offense would be subject to automatic forfeiture of office based on that conviction.

In 1972, however, the General Assembly adopted the Crimes Code,[1] which repealed all common-law crimes and provided that "[n]o conduct constitutes a crime unless it is a crime under this title or another statute of this Commonwealth." 18 Pa.C.S. Section 107(b). In *Braig*, a plurality of the Supreme Court avoided the "difficult question" of whether the legislature "could effectively nullify the constitutional provision by abolishing the crime referred to therein ..." *Id.*, 527 Pa. at 254, 590 A.2d at 287.[2] The Court avoided the question by holding that, for the purpose of the then-existing Article V, Section 18(*l*) "automatic forfeiture" provision, the Supreme Court would compare, based on the record before it, the elements of the statutory criminal conviction to the elements of the common-law crime of "misbehavior in office" in order to determine whether automatic forfeiture was required. The *Braig* plurality concluded that the approach was "prudent" in order to give effect to the constitutional provision. *Id.* at 254, 590 A.2d at 287–88.[3]

---

1. 18 Pa.C.S. Sections 1–9183, effective, June 6, 1973, *as amended.*

2. Justice Papadakos concurred in the result in *Braig*, but would have reached and decided the "difficult question" by concluding that the adoption of Article V, Section 18(*l*) in 1968 preserved the common-law crime of "misbehavior in office," which could not have been abrogated by the legislature when it adopted the Crimes Code. *Id.*, 527 Pa. at 259, 590 A.2d at 290 (Papadakos, J., concurring).

3. This solution was workable under the prior constitutional provision because the Supreme Court possessed exclusive jurisdiction over cases

A different issue is before this Court than was presented to the Supreme Court in *Braig.* In light of the 1993 constitutional amendment, we are faced with the question of whether a constitutional provision should be construed as reflecting the state of the law at the time of its adoption. I believe that it must. The General Assembly, when it adopted the Joint Resolutions proposing the 1993 amendment to Article V[4], must be presumed to have known that "misbehavior in office" no longer existed as a cognizable criminal offense in this Commonwealth. A court is to interpret constitutional language in its popular, ordinary, and natural meaning, taking into consideration the circumstances surrounding its formation and the likely construction placed upon it by the people who voted for it. *Lyles v. City of Philadelphia,* 88 Pa.Commw. 509, 490 A.2d 936 (1985), *aff'd,* 512 Pa. 322, 516 A.2d 701 (1986). I can not conclude that the electorate in 1993 attached to the phrase "misbehavior in office" the technical meaning of a common-law crime which had been abolished more than two decades earlier.

If the phrase "misbehavior in office" does *not* refer to the former common-law crime, we must next consider whether it can be given any effect absent further action by the legislature. The noted Pennsylvania constitutional commentator, Robert E. Woodside, states that a constitutional provision is self-executing when it can be given effect without the aid of legislation and when the language of the provision does not indicate an intent to require legislation. Woodside, *Pennsylvania Constitutional Law* at 71. The automatic forfeiture provision for conviction of misbehavior in office does not set forth the elements of the offense, nor does it provide for the procedure, jurisdiction or venue for prosecution. A criminal provision which fails to

give to a person of ordinary intelligence fair notice that his contemplated conduct is forbidden would violate the 14th Amendment to the United States Constitution. *Commonwealth v. Stein,* 519 Pa. 137, 546 A.2d 36 (1988), *cert. denied sub. nom. Pennsylvania v. Stein,* 490 U.S. 1046, 109 S.Ct. 1953, 104 L.Ed.2d 422 (1989). Because the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable, 1 Pa.C.S. Section 1922, I conclude that automatic forfeiture for the reason of conviction of the crime of misbehavior in office is not self-executing absent legislation defining the crime of "misbehavior in office."

Even if the analysis of Braig and its progeny was applied, the petition must still be dismissed. In *Braig,* the Supreme Court concluded that the underlying conviction for federal mail fraud did not satisfy the elements of the common-law crime of "misbehavior in office." A conviction of two counts of attempted federal income tax evasion was similarly found not to constitute misbehavior in office. *In re Dalessandro,* 528 Pa. 240, 596 A.2d 798 (1991). In fact, the sole reported case finding a conviction of "misbehavior in office" involved a federal conviction on one count of accepting money from an attorney in violation of the Hobbs Act. *In re Cain,* 527 Pa. 260, 590 A.2d 291 (1991). Cain did not dispute the characterization of his conviction as "misbehavior in office." Accordingly, the question of whether sufficient evidence was of record to support such a finding was not at issue.

The question of the amount of evidence needed was, however, partially answered in *In re Scott,* 528 Pa. 206, 596 A.2d 150 (1991). The petition filed in *Scott* contained only a certified copy of the criminal information set-

---

involving judicial discipline. Accordingly, it made no practical difference whether the Judicial Inquiry and Review Board presented a case as a "petition for automatic forfeiture" or as a formal recommendation based on investigation and hearing, as the Supreme Court retained the power to accept, reject or modify any recommendations, and, in at least one case, rejected automatic forfeiture while ordering removal on the theory that the conduct violated ethical standards. *In re Scott,* 528 Pa. 206, 596 A.2d 150 (1991).

4. Pursuant to Article XI, Section 1 of the Pennsylvania Constitution, proposed constitutional amendments must be agreed to by both houses in two successive General Assemblies prior to being placed on the ballot for approval by the electorate. The 1993 amendment approved by Joint Resolution No. 1, 1992, P.L. 1823, S.B. No. 1000 and Joint Resolution No. 1, 1993, P.L. 577, H.B. No. 1.

ting forth the charges and certified copies of the sentencing orders. The underlying criminal conviction in *Scott* was a violation of 18 Pa.C.S. Section 5101, the same offense of which Gentile was convicted. Based on the "sparse record" before it, the Supreme Court concluded that it could not properly determine whether Scott's conviction constituted "misbehavior in office." A review of the evidence before this Court reveals it to be equally sparse.

In the present case, the Board's petition contains a verdict slip from the Court of Common Pleas of Chester County showing one conviction of "obstruction of administration of law or other governmental function," and noting parenthetically "[Kramer citation/Chief Thomas, Officer Moore]." Petition to Implement Automatic Forfeiture, Exhibit A. Under this same parenthetical, however, the jury slip notes an acquittal on a charge of Official Oppression. The Board's petition also contains a sentencing sheet (Exhibit C), copies of the opinion of the trial court denying Gentile's post-verdict motions (Exhibit B), and a copy of an opinion and judgment by the Superior Court affirming Gentile's conviction (Exhibit D).

Paragraph 6 of the Board's petition contains the crucial allegations of fact in this matter. This paragraph reads in full as follows:

6. In Count 4 [of the criminal information], the Commonwealth alleged that the Respondent had *ex parte* contacts with and made repeated requests of the chief of a local police department in an effort to have the chief "fix" a speeding ticket by withdrawing the citation and substitute for it, a citation charging a violation of Section 3111 of the Vehicle Code which is a 0 points offense. When the chief took no action, the district justice threatened that he would call other speeding violators for hearings and find them not guilty. As a result of this threat, and Respondent's other actions, the chief withdrew the speeding citation that had been filed and filed a

citation charging a violation of Section 3111 of the Vehicle Code. This speeding citation was issued by the Parkesburg, Chester County Police. Department and the adjudication of this citation was within the jurisdiction of the Respondent.

If these allegations were uncontested, they may well be sufficient to establish the performance of a discretionary duty with a corrupt or improper motive, one of the prongs of the common-law crime. Gentile's Answer to the Petition, however, contains the following denial to paragraph 6.

6. Denied. Respondent was never charged with trying to "fix" a speeding ticket. He was alleged to have requested a change in the charged violation, and was alleged to have forced the Chief to change the violation. He never threatened anyone, and there was no evidence admitted at trial to support any contention of force or threat. The Parkesburg Borough Police Chief admitted at trial that the suggestion that the respondent would find defendants not guilty occurred with regard to a class of cases where uncertified officers offered technical VASCAR evidence; respondent informed the Chief, prospectively, that he would not receive the officer's testimony into evidence until they were certified in the use of VASCAR equipment. In fact, the Chief volunteered to change the citation after he started a heated, unrelated argument with the District Justice.

In his Memorandum of Law, Gentile argues, and I agree, that the factual record before this Court is insufficient to implement automatic forfeiture of office pursuant to Article V, Section 18(d)(3). While the Board filed with this Court the opinions of both the trial court and the Superior Court, both of which summarize and discuss the testimony presented at trial, *neither of these opinions either finds certain facts to be true or concludes, as a matter of law, that Gentile's conviction satisfies the elements of the common-law crime of "misbehavior in office."* [5]

---

5. Both opinions discuss trial testimony in the context of Gentile's challenge that insufficient evidence was presented from which the jury could convict him of a violation of 18 Pa.C.S.

Section 5101. As noted by Judge Saylor of the Superior Court:

In evaluating Appellant's claim regarding the sufficiency of the evidence, we must decide:

Rather, as illustrated by the Board's allegations and Gentile's denial, the crucial facts which must be found in order to establish "misbehavior in office" are contested. Without findings by the trial court or an evidentiary hearing before this Court, the record currently before this Court is insufficient to implement automatic forfeiture of office based on a conviction of "misbehavior in office."

> [w]hether, viewing the evidence in the light, most favorable to the Commonwealth, and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to find every element of the crime beyond a reasonable doubt....
>
> *Commonwealth v. Gentile*, 433 Pa.Super. 381, 385, 640 A.2d 1309, 1312 (1994) (quoting *Commonwealth v. Harper*, 485 Pa. 572, 576, 403 A.2d 536, 538 (1979)).

McGINLEY and MAGARO, JJ., join this Opinion in Support of Dismissal of Petition for Automatic Forfeiture.

DePAUL, J., concurs in the result.

The crime to which Judge Saylor was referring was, of course, obstruction of administration of law or other governmental function. We cannot infer from the Superior Court's conclusion that sufficient evidence had been presented to establish the quite distinct elements of the common-law crime of "misbehavior in office."