J-S38030-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JUSTIN TRAVIS ALBERTSON | : | |
| | : | |
| Appellant | : | No. 409 MDA 2020 |

Appeal from the Judgment of Sentence Entered January 27, 2020
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0000480-2019

BEFORE: KUNSELMAN, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McLAUGHLIN, J.: **FILED NOVEMBER 17, 2020**

Justin Travis Albertson appeals from the judgment of sentence entered on January 27, 2020, following his convictions for Driving Under the Influence ("DUI") - General Impairment, Duties at a Stop Sign, Reckless Driving, Obstructing the Administration of Law or Other Governmental Function, and Recklessly Endangering Another Person ("REAP").[1] Albertson challenges the sufficiency and weight of the evidence. Albertson's counsel has filed an **Anders**[2] brief and a petition to withdraw as counsel. Upon review, we grant counsel's petition to withdraw and affirm the judgment of sentence.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S.A. § 3802(a)(1), 75 Pa.C.S.A. § 3323(b), 75 Pa.C.S.A. § 3736(a), 18 Pa.C.S.A. § 5101, and 18 Pa.C.S.A. § 2705, respectively.

[2] **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

The trial court accurately summarized the facts as follows:

> In the early hours of November 26, 2019, Sara Luckenbaugh was thrown from her bed by a strange bedfellow, a car, belonging to and driven by Justin Albertson. At approximately 2:30 A.M., neighbors heard squealing tires, a loud bang, and breaking glass. Justin Albertson had driven his car into the home of Sara Luckenbaugh.
>
> One of the first people on the scene of the accident was Robert Austera, a neighbor. Prior to the accident, Austera heard a vehicle squeal its tires, followed by a loud bang and the sound of breaking glass. When Austera arrived at the house, Albertson was still in the vehicle and was attempting to back out of the house. Once Albertson was removed from the vehicle, Austera noted that Albertson's eyes were glassy and his speech was slurred.
>
> Shortly thereafter, Officers Kesselring and Knepp of Hanover Borough Police Department arrived at the scene of the accident at the intersection of Pleasant Street and McAllister Street in Hanover. Officer Knepp arrived at the scene after being dispatched. Upon arriving, he observed a vehicle up on the curb and in the front of the house. Officer Knepp spoke to Sara Luckenbaugh and he observed that she seemed to be in shock.
>
> Officer Kesselring first heard a crash and then was subsequently dispatched to the Pleasant and McAllister Street location. During his initial conversation with Albertson, Officer Kesselring observed a strong odor of alcohol coming from Albertson's breath and person. He also observed that Albertson's speech was slurred, and his eyes were glassy and bloodshot. When Officer Kesselring asked Albertson about the accident, Albertson was unable to articulate what had happened.
>
> Officer Kesselring had Albertson perform field sobriety tests. Albertson performed the walk and turn test. During the walk and turn test Officer Kesselring noticed severe signs of intoxication and impairment including Albertson falling off the line twice and spinning around rather than turning. Albertson also performed the one leg stand test. Officer Kesselring also observed signs of impairment during the one

leg stand test such as swaying, additionally, Albertson put his foot down numerous times and at one point almost fell over. Officer Kesselring was wearing a body camera at the time he administered the field sobriety tests; this video was shown to the jury.

At the conclusion of the field sobriety tests, Officer Kesselring placed Albertson under arrest for suspicion of driving under the influence of alcohol and controlled substance and he was transported to UPMC Hanover Hospital for a blood draw. Officer Kesselring notified Albertson of his right of refusal and read him the PennDOT DL-26 form. At that time, Albertson refused the test and began calling Officer Kesselring names and insulting him. Albertson also refused treatment for any potential injuries. As a result of Albertson's refusal he was transported back to Hanover Borough Police Department.

Once back at Hanover Borough Police Department, Albertson refused to get out of the police car. After Albertson's initial refusal, Officer Kesselring prepared and obtained a search warrant to obtain a blood draw. When Officer Kesselring notified Albertson of the search warrant he became combative and threatened to assault Officer Kesselring. Because of Albertson's behaviors, Officer Kesselring feared for his safety or the safety of other officers. Albertson did not comply with the search warrant and would not submit to the blood draw.

Trial Court Opinion, filed 4/17/20, at 1-4 (citations to the trial transcript omitted).

A jury found Albertson guilty of DUI, Obstructing the Administration of Law or Other Governmental Function, and REAP. The trial court, sitting as factfinder, found Albertson guilty of Duties at a Stop Sign and Reckless Driving. The court sentenced Albertson to nine months to five years in prison. After the trial court denied Albertson's post-sentence motion, this timely appeal followed. Albertson's counsel filed a court-ordered Pa.R.A.P. 1925(b)

statement in the trial court, and then submitted an **Anders** brief and petition to withdraw in this Court.

Counsel's **Anders** brief identifies six issues:

1. Whether the evidence . . . was insufficient to sustain Mr. Albertson's conviction for Driving Under the Influence, General Impairment[?]

2. Whether the evidence was insufficient to sustain Mr. Albertson's conviction of Obstructing Administration of Law or Other Governmental Function[?]

3. Whether the evidence was insufficient to sustain Mr. Albertson's conviction of Recklessly Endangering Another Person[?]

4. Whether the evidence was insufficient to sustain Mr. Albertson's conviction for Duties at a Stop Sign[?]

5. Whether the evidence was insufficient to sustain Mr. Albertson's conviction for Reckless Driving[?]

6. Whether the weight of the evidence was against the verdict on all counts[?]

**Anders** Br. at 5.

Before reviewing the merits of this appeal, we must first determine whether counsel has satisfied the necessary requirements for withdrawing as counsel. **See Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa.Super. 2007) (*en banc*) (stating that "[w]hen faced with a purported **Anders** brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw"). In order to withdraw pursuant to **Anders**, counsel must: 1) petition the court for leave to withdraw stating that, after a conscientious examination of the record, counsel has determined

- 4 -

that the appeal would be frivolous; 2) furnish a copy of the brief to the client; and 3) advise the client that he or she has the right to retain other counsel or proceed *pro se*. **Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*).

Further, in the **Anders** brief, counsel seeking to withdraw must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009). If counsel meets all of the above obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." **Id.** at 355 n.5 (quoting **Commonwealth v. McClendon**, 434 A.2d 1185, 1187 (Pa. 1981)).

Instantly, we find that counsel has complied with all of the above technical requirements. In her **Anders** brief, counsel has provided a summary of the procedural and factual history of the case with citations to the record. Further, counsel's brief identifies six issues that could arguably support the appeal, as well as counsel's assessment of why the appeal is frivolous, with citations to the record. Additionally, counsel served Albertson with a copy of

the **Anders** brief and advised him of his right to proceed *pro se* or to retain a private attorney to raise any additional points he deemed worthy of this Court's review. Petition to Withdraw, 6/8/20, at ¶ 5. Albertson has not responded to counsel's petition to withdraw. As counsel has met the technical requirements of **Anders** and **Santiago**, we will proceed to the issues counsel has identified.

The first five issues presented in counsel's **Anders** brief challenge the sufficiency of the evidence. When reviewing such a challenge, our standard of review is *de novo*, while "our scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner." **Commonwealth v. Rushing**, 99 A.3d 416, 420-421 (Pa. 2014). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." **Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000). The Commonwealth may sustain its burden by means of wholly circumstantial evidence. **Commonwealth v. Dix**, 207 A.3d 383, 390 (Pa.Super. 2019). Further, the trier of fact is free to believe, all, part, or none of the evidence presented when making credibility determinations. **Commonwealth v. Beasley**, 138 A.3d 39, 45 (Pa.Super. 2016). "[T]his Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed." **Commonwealth v. Smith**, 146 A.3d 257, 261 (Pa.Super. 2016).

The first issue contends the trial evidence was insufficient to support his conviction for DUI because the Commonwealth failed to prove that Albertson was incapable of safely driving due to the consumption of alcohol. Section 3802(a)(1) of the Vehicle Code provides that "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." 75 Pa.C.S.A. § 3802(a)(1). Accordingly, "the Commonwealth must show: (1) that the defendant was the operator of a motor vehicle and (2) that while operating the vehicle, the defendant was under the influence of alcohol to such a degree as to render him or her incapable of safe driving." ***Commonwealth v. Smith***, 831 A.2d 636, 638 (Pa.Super. 2003) (citation omitted). "To establish the second element, it must be shown that alcohol has substantially impaired the normal mental and physical faculties required to safely operate the vehicle." ***Commonwealth v. Palmer***, 751 A.2d 223, 228 (Pa.Super. 2000).

> The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech.

***Commonwealth v. Segida***, 985 A.2d 871, 879 (Pa. 2009). Further, "[e]vidence that the driver was not in control of himself, such as failing to

pass a field sobriety test, may establish that the driver was under the influence of alcohol to a degree which rendered him incapable of safe driving, notwithstanding the absence of evidence of erratic or unsafe driving." *Palmer*, 751 A.2d at 228.

In its Pa.R.A.P. 1925(a) opinion, the trial court addressed Albertson's DUI sufficiency claim as follows:

> At trial, Officer Kesselring testified to Albertson's physical appearance. Officer Kesselring noted that immediately upon interacting with Albertson he could smell the odor of alcohol emanating from his person. He also noted Albertson's bloodshot eyes. When Officer Kesselring administered the walk and turn test and the one leg stand test, Albertson exhibited many signs of intoxication, including not being able to turn correctly and having to put his foot down and nearly falling over. The jury was able to view video evidence of this as Officer Kesselring was wearing a body camera. Additionally, when Officer Kesselring brought Albertson to booking he became extremely aggressive and threatened and insulted Officer Kesselring. Most obvious of all, Justin Albertson drove his vehicle into a house. When Officer Kesselring asked Albertson about the accident, he was unable to articulate what happened.

Trial Ct. Op. at 10.

The record supports the trial court's analysis of this issue. The trial testimony established the requisite evidence of intoxication necessary for the jury as factfinder to conclude that Albertson was unable to drive safely at the time he crashed his vehicle into Sara Luckenbaugh's house.

Albertson's Pa.R.A.P. 1925(b) statement concedes that Officer Kesselring determined that he failed the standard field sobriety tests, but contends that Officer Kesselring failed to ask Albertson if he had sustained any

injuries due to the accident or had any pre-existing medical conditions that might have hindered his ability to complete the standard field sobriety tests as instructed. Albertson's Rule 1925(b) Statement at 2. However, this argument erroneously suggests that the Commonwealth had the burden of proof on this issue. *See Commonwealth v. Collins*, 810 A.2d 698, 701 (Pa.Super. 2002) (concluding that "when a defense is asserted that relates to the defendant's mental state or information that is peculiarly within the defendant's own knowledge and control, the general rule is that the defendant has the burden of proving the defense by a preponderance of the evidence"). Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, there is no reasonable argument that sufficient evidence did not support Albertson's DUI conviction.

The next issue challenges the sufficiency of the evidence to support the conviction for Obstructing the Administration of Law or Other Governmental Function. According to the Rule 1925(b) statement, Albertson "never indicated he would not comply with the search warrant nor did his actions indicate his intent was to prevent his blood from being drawn." Albertson's Rule 1925(b) Statement at 3. He allegedly did not engage in any sort of "affirmative interference" that would have impeded Officer Kesselring from obtaining his blood since he did not become physical with Officer Kesselring or engage in any on-going or persistent conduct. *Id.*

The offense of Obstructing the Administration of Law or Other Governmental Function is defined as follows:

> A person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.

18 Pa.C.S.A. § 5101. "Thus, the crime consists of two elements: 1) an intent to obstruct the administration of law; and 2) an act of 'affirmative interference with governmental functions.'" ***Commonwealth v. Palchanes***, 224 A.3d 58, 60 (Pa.Super. 2019) (quoting ***Commonwealth v. Gentile***, 640 A.2d 1309, 1312 (Pa.Super. 1994)). The statute was "designed to cover a broad range of behavior that impedes or defeats the operation of government." ***Id.*** (quoting Model Penal Code § 242.1, Explanatory Note).

Instantly, the record belies the assertion that Albertson never indicated he would not comply with the search warrant for a blood draw. The testimony was clear that after Albertson was arrested, he was transported to the hospital where he refused a blood test and began calling Officer Kesselring names and insulting him. As a result of Albertson's refusal to take a blood test, he was taken back to the police station, where he refused to get out of the police car. Consequently, Officer Kesselring prepared and obtained a search warrant to obtain a blood draw. Despite being presented with a valid search warrant by a police officer, Albertson became combative and threatened to physically assault Officer Kesselring. Officer Kesselring testified that Albertson walked

towards him with his arms clenched and fists down while making these verbal threats and that he feared for his safety or the safety of other officers. N.T., 11/19/19, at 112-113.

Ultimately, Albertson refused to comply with the warrant and would not allow a blood draw to take place, thus impeding Officer Kesselring's investigation of the DUI case. The contention that Albertson did not become physical with Officer Kesselring lacks any basis in the record since the interference necessary to sustain a conviction for Obstructing the Administration of Law or Other Governmental Function "need not involve physical contact with the government official as he performs his duties." *Palchanes*, 224 A.3d at 60 (citation omitted). Therefore, Albertson's intentional actions in being combative with law enforcement and refusing to allow a blood draw to occur interfered with the administration of law. There is no reasonable argument that the evidence was not sufficient to support Albertson's conviction for this offense.

The third issue challenges the sufficiency of the evidence to sustain Albertson's conviction for REAP. The evidence was allegedly insufficient to prove that he recklessly engaged in conduct that might have placed Ms. Luckenbaugh in danger of death or serious bodily injury. Albertson's Rule 1925(b) Statement at 3-4. This is allegedly so because "there was no evidence presented regarding the manner in which [he] drove to indicate it was done in a reckless manner or that it involved a gross deviation from the standard of conduct that a reasonable person would observe." *Id.* at 4.

- 11 -

A person commits REAP "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. Therefore, in order to sustain a conviction for REAP, "the Commonwealth must prove that the defendant (1) possessed a *mens rea* [of] recklessness, (2) committed a wrongful deed or guilty act (*actus reus*), and (3) created by such wrongful deed the danger of death or serious bodily injury to another person." **Commonwealth v. Bostian**, 232 A.3d 898, 909 (Pa.Super. 2020) (citation and internal quotation marks omitted). "The reckless mental state required for a REAP conviction has been defined as a conscious disregard of a known risk of death or great bodily harm to another person." **Id.** (citation and internal quotation marks omitted). "[D]riving under the influence of intoxicating substances does not create legal recklessness *per se* but must be accompanied with other tangible indicia of unsafe driving to a degree that creates a substantial risk of injury which is consciously disregarded." **Commonwealth v. Hutchins**, 42 A.3d 302, 311 (Pa.Super. 2012) (quoting **Commonwealth v. Mastromatteo**, 719 A.2d 1081, 1083 (Pa.Super. 1998)).

Here, although there was no eyewitness testimony of Albertson's driving before the accident, there was testimony from Mr. Austera, the neighbor, that he heard a vehicle rev its engine and squeal its tires right before the crash. N.T., 11/19/19, at 87. The evidence further indicated that Albertson drove his car into Ms. Luckenbaugh's house, the impact of which was so great that it caused the house to split into two sides and tossed Ms. Luckenbaugh off her

- 12 -

bed and onto the floor. *Id.* at 80-81, 128. It is clear that Albertson's conduct placed Ms. Luckenbaugh "in danger of death or serious bodily injury." *See* 18 Pa.C.S.A. § 2705. While it is true that driving under the influence alone cannot establish the element of recklessness for REAP, the evidence admitted at his trial included "other tangible indicia of unsafe driving to a degree that creates a substantial risk of injury which is consciously disregarded[,]" *Hutchins*, 42 A.3d at 311, therefore establishing the *mens rea* of recklessness for REAP. As such, the third claim lacks any reasonable basis in the record.

The next issue challenges the evidence supporting the conviction for Duties at a Stop Sign. The claim is that there was no testimony that Albertson failed to stop at a stop sign. Albertson's Rule 1925(b) Statement at 4-5.

The offense of Duties at a Stop Sign requires "every driver of a vehicle approaching a stop sign" to "stop at a clearly marked stop line[.]" 75 Pa.C.S.A. § 3323(b). Although there were no eyewitnesses who saw Albertson run the stop sign, there was circumstantial evidence that he failed to stop. The Commonwealth presented photographs showing that Ms. Luckenbaugh's house was located on the corner of an intersection with a stop sign in close proximity to her residence. N.T., 11/19/19, at 71-74; Commonwealth's Exhibit 2. The photographs also showed Albertson's car lodged into the house, as well as significant damage to the residence. N.T., 11/19/19, at 79-80; Commonwealth's Exhibits 9, 10. Another photograph showed a street sign that had been planted in the sidewalk in front of Ms. Luckenbaugh's residence that had been knocked over due to the impact of the crash. N.T., 11/19/19, at 79-

80; Commonwealth's Exhibit 9. There was also evidence of skid marks in the roadway. N.T., 11/19/19, at 74. Albertson's neighbor, Mr. Austera, also testified that he heard a vehicle "start up and begin revving its engine, and said vehicle took off down the road and came back a couple minutes later and began to squeal its tires, and ultimately I heard a loud bang and a bunch of glass breaking and a bunch of noises." *Id.* at 87. As the trial court aptly noted, "[a]t no point did Austera testify that he heard [Albertson's] vehicle breaking." Trial Ct. Op. at 17. The sufficiency challenge to the conviction for Duties at a Stop Sign lacks a reasonable basis in fact or law.

The fifth issue is that the evidence was insufficient to sustain his conviction for Reckless Driving because there was allegedly no evidence regarding the manner in which he drove. Albertson's Rule 1925(b) Statement at 5.

A person is guilty of Reckless Driving if he or she "drives any vehicle in willful or wanton disregard for the safety of persons or property[.]" 75 Pa.C.S.A. § 3736(a).

Here, in finding that the evidence was sufficient to support Albertson's conviction for Reckless Driving, the trial court stated:

> While the evidence to support this charge is entirely circumstantial, the Commonwealth has proven beyond a reasonable doubt that [Albertson] drove in such a manner that there existed a substantial risk that injury would result from his driving. First, the testimony of Mr. Austera was that he heard a vehicle take off down the road, he then heard squealing tires, and then he heard a crash. Second, there was the crash itself that resulted in [Albertson's] car being inside the home of Sara Luckenbaugh, who could have

> sustained serious bodily injury as a result of [Albertson's] willful or wanton disregard for the safety of persons.

Trial Ct. Op. at 18.

Thus, it was undisputed that Albertson drove his vehicle into Ms. Luckenbaugh's house. The crash caused significant property damage to the residence and was without regard to the safety of the residents of the house. Viewing all of the evidence admitted at trial in the light most favorable to the Commonwealth as the verdict winner, there is no reasonable basis on which to argue that the evidence does not support Albertson's conviction for Reckless Driving.

The final issue challenges the weight of the evidence on all counts. When reviewing a weight challenge on appeal, we do not determine ourselves whether the verdict was against the weight of the evidence. Rather, we review the trial court's exercise of its discretion in determining, in the first instance, whether to sustain the challenge. *Commonwealth v. Johnson*, 192 A.3d 1149, 1152-1153 (Pa.Super. 2018).

> It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice.

*Commonwealth v. Houser*, 18 A.3d 1128, 1135-1136 (Pa. 2011). Further, "[w]hen the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is

extremely limited." ***Commonwealth v. Bowen***, 55 A.3d 1254, 1262 (Pa.Super. 2012) (citation omitted).

Albertson failed to raise weight claims challenging the convictions of Duties at a Stop Sign and Reckless Driving in the trial court. Therefore, those claims are waived. ***See Commonwealth v. Lofton***, 57 A.3d 1270, 1273 (Pa.Super. 2012). Regarding the convictions for DUI, Obstructing the Administration of Law or Other Governmental Function, and REAP, we perceive no reasonable basis on which Albertson could challenge the trial court's rejection of the weight challenge. The jury, sitting as factfinder and sole judge of credibility, was free to believe all, part, or none of the evidence presented in judging the credibility of the witnesses, and nothing in the record provides any reasonable basis for arguing that the trial court abused its discretion in rejecting the weight challenges to these convictions. ***Houser***, 18 A.3d at 1135-1136.

In sum, we find that the issues raised in counsel's ***Anders*** brief are wholly frivolous. Further, after an independent review of the record, we conclude that no other, non-frivolous issue exists. Therefore, we grant counsel's petition to withdraw. Having determined that the appeal is wholly frivolous, we affirm the judgment of sentence.

Petition to withdraw as counsel granted. Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/17/2020