J-S64039-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: B.C.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B.C.H. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 211 MDA 2017 |

Appeal from the Order Entered December 28, 2016
In the Court of Common Pleas of Lancaster County Juvenile Division at
No(s): CP-36-JV-0000525-2016

BEFORE: PANELLA, J., SHOGAN, J., and FITZGERALD,[*] J.

MEMORANDUM BY FITZGERALD, J.: **FILED NOVEMBER 20, 2017**

Appellant, B.C.H., appeals from a dispositional order adjudicating him delinquent for committing involuntary deviate sexual intercourse ("IDSI"),[1] aggravated indecent assault,[2] indecent assault[3] and simple assault.[4] Appellant argues that the trial court erred in refusing to permit him to cross-examine one of the victims, B.F., about her romantic interest in another boy at the time of the incident. We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 3123(a)(1).

[2] 18 Pa.C.S. § 3125(a)(1).

[3] 18 Pa.C.S. § 3126(a)(2).

[4] 18 Pa.C.S. § 2701(a)(1).

The juvenile court accurately recounted the evidence against B.C.H. as follows:

The Commonwealth called victim M.B., victim B.F., and Officer Nelson Renno as witnesses. While both victims recounted consistent versions of what happened on the day of the incident, their testimony was not identical. The victims' testimony was further corroborated by Officer Renno's testimony.

Victim M.B. testified that on June 30, 2016, she was hanging out with [Appellant], [A.J.], and victim B.F., [A.J.] left to go to a swim meet, and the remaining three youth[s] went to [Appellant]'s house to continue hanging out. They were all sitting on the futon in [Appellant]'s house when [Appellant] attacked them. It started when [Appellant] put a pillow over victim B.F.'s face, and victim M.B. pulled him off of her. [Appellant] would grab one victim by the neck, and the other victim would try to pull [Appellant] off of the victim being attacked. During this back and forth, victim M.B. testified that [Appellant] pulled her shorts to the side and tried to sodomize her with a black air pump, put his finger in her anus, and groped her body. At one point, [Appellant] left the room and the victims tried to leave, but could not get the door open. Victim M.B. also testified that she and victim B.F. told [Appellant] multiple times to stop and get off them, but he would not. [Appellant] finally stopped when victim M.B. pointed out the bruises on victim B.F.'s neck. At [Appellant]'s instruction, the victims Google searched how to get rid of bruises and learned that cold spoons in the freezer and toothbrushes for circulation can help, and then they proceeded to use these methods to try and lessen the bruising. Victim B.F.'s grandmother picked up both victims at [Appellant]'s house. Victim [M.B.] testified that victim B.F. told her grandmother what happened that night, and victim [M.B.] told her mother the next day, and then their parents called the police. Victim M.B. further testified that she was with victim B.F. when they were interviewed by the police and wrote their written statements, but that she and victim B.F. did not tell each other what to write in the statement. The Commonwealth presented photographs of bruises on both victims' necks and victim B.F.'s thighs, a

photograph of the black air pump, and a photograph of [Appellant]'s living room. The [c]ourt found victim M.B.'s testimony credible.

Victim B.F.'s testimony regarding the incident on June 30, 2016 included many of the same details as victim M.B.'s testimony. Victim B.F. testified that the assault started when [Appellant] pushed her down into the futon and put a pillow on her face. The next time he pushed her down it was by her neck, and this is when the back and forth of [Appellant] grabbing a victim's neck and holding her down while the other victim tried to pull [Appellant] off began. During the attack, victim B.F. testified that [Appellant] pulled up her shirt and was biting her stomach, and was touching her thighs. She also saw [Appellant] put the black air pump inside victim M.B.['s anus]. Victim B.F. also testified that victim M.B. could not get the door open for them to leave, and that they used cold spoons and a toothbrush to lessen the bruising. When her grandmother arrived, they still could not open the door, and [Appellant] opened it for them. Victim B.F. testified on cross-examination [that] her grandmother noticed the bruising on her neck, and she said it was a bug bite because she did not want to tell her grandmother what happened yet. Victim B.F. further testified that she was with victim M.B. when the police interviewed them, they wrote their written statements at the same time, but did not discuss what to write with each other. The [c]ourt found victim B.F.'s testimony credible.

Officer Nelson Renno, a state police trooper, testified that during the search of [Appellant]'s home, they found a black air pump, a pack of open toothbrushes on top of a laundry appliance, and in what appeared to be [Appellant]'s bedroom, a backpack that contained multiple silver spoons. The Commonwealth presented photographs of the toothbrushes and spoons in the backpack. The [c]ourt found Officer Renno's testimony credible.

Juvenile Ct. Op., 3/3/17, at 5-7. The court further summarized the evidence

thusly:

[Appellant] forcibly inserted the pointed end of an air pump and his finger into the anus of victim M.B., forcibly grabbed the inner thighs and buttocks of victim M.B., forced his fingers into victim M.B.'s mouth, pushed victim M.B. to the ground and grabbed her throat, making it hard for her to breath[e] and resulting in bruising. [Appellant] also . . . forcibly put his hands under the shirt and bra of victim B.F., grabbed victim B.F.'s breasts and forcibly bit victim B.F.'s neck and stomach, kissed her lips[] and grabbed her inner thighs and buttocks.

*Id.* at 2 (citations omitted). Appellant testified and claimed that B.F. consented to his conduct. N.T., 12/8/16, at 66-69.

The juvenile court adjudicated Appellant delinquent, found him in need of rehabilitation and treatment, and committed him to a secure juvenile facility. Appellant filed a timely notice of appeal, and both Appellant and the juvenile court complied with Pa.R.A.P. 1925.

Appellant raises a single issue on appeal:

I. Did the [juvenile] court err in sustaining the Commonwealth's objection and not allowing [Appellant] to cross-examine the victim[,] B.F.[,] on her romantic interest in another boy, A.J., at the time of the incident, where the testimony was relevant to show the victim's bias and motive to fabricate?

Appellant's Brief at 5.

In juvenile proceedings,

[t]he scope and limits of cross-examination are largely within the discretion of the trial court[,] and its actions pertaining thereto will not be reversed in the absence of a clear abuse of its discretion or error of law. Nevertheless, "[c]riminal defendants have a constitutional right to confront witnesses against them, which includes the right to cross-examine. Cross-examination may be employed to test a witness' story, to impeach credibility, and to

- 4 -

> establish the witness' motive for testifying." It is well established, therefore, "that a witness may be cross-examined as to any matter tending to show the interest or bias of that witness." "It is particularly important that, where the determination of a defendant's guilt or innocence is dependent upon the credibility of a prosecution witness, an adequate opportunity be afforded to demonstrate through cross-examination that the witness is biased.

*Interest of Dixon*, 654 A.2d 1179, 1181 (Pa. Super. 1995) (internal citations and some internal quotations omitted).

This Court has held with regard to cross-examination for the purpose of showing bias or motive:

> Generally, evidence of interest or bias on the part of a witness is admissible and constitutes a proper subject for cross-examination. It is well-settled law that cross-examination directed toward revealing possible bias, interest or motive of a witness in testifying against the defendant is always relevant as discrediting the witness and affecting the weight of his testimony.

*Commonwealth v. Gentile*, 640 A.2d 1309, 1313 (Pa. Super. 1994) (internal citations omitted).

If the hearing judge errs in disallowing certain cross-examination, such an error is subject to a harmless error analysis. The Pennsylvania Supreme Court has stated that "an error can be harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless." *Commonwealth v. Story*, 383 A.2d 155, 162 (Pa. 1978). To determine whether an error is harmless, "the uncontradicted evidence of guilt must be so overwhelming, and the prejudicial effect of the improperly admitted

evidence so insignificant by comparison, that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict." ***Id.*** at 168. Thus, an error is harmless if "the appellate court determines that the error could not have contributed to the verdict." ***Commonwealth v. Rush***, 605 A.2d 792, 794 (Pa. 1992).

We agree with Appellant that the juvenile court erred in refusing to permit him to cross-examine B.F. with regard to her romantic interest in A.J. at the time of the incident, because it gave her a motive to fabricate her testimony. Appellant described the incident as consensual. B.F. might have feared that A.J. would be angry with her if he learned that the incident with Appellant was consensual.

Nevertheless, we conclude that this error was harmless, because the testimony of the other victim, M.B., and Officer Renno corroborated B.F.'s testimony and overwhelmingly established the Commonwealth's case. The juvenile court credited M.B.'s detailed testimony that Appellant attacked her and B.F. Appellant does not contend that M.B. had any possible bias or motive to fabricate, and the record shows that M.B. and B.F. did not tell each other what to write in their accounts of the incident. Moreover, Officer Renno searched Appellant's house and found the air pump that Appellant used to penetrate M.B.'s anus and the spoons and toothbrush that the victims used to treat their injuries. Thus, the juvenile court correctly concluded:

>   Since the substance of victim B.F.'s testimony was confirmed by the testimony of other witnesses at the adjudicatory hearing, the result at the hearing would not have differed, and . . . the [juvenile] court's refusal to permit cross-examination of victim B.F. to reveal possible bias or motive to fabricate had no impact on the outcome of this case.

Juvenile Ct. Op. at 9.

Order affirmed.

Judge Shogan joins the Memorandum.

Judge Panella files a Concurring Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/20/2017