J-A12018-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JORGE O. PEREZ | : | |
| | : | |
| Appellant | : | No. 1777 EDA 2022 |

Appeal from the Judgment of Sentence Entered June 7, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004874-2021

BEFORE: OLSON, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY NICHOLS, J.: **FILED JULY 10, 2023**

Appellant Jorge O. Perez appeals from the judgment of sentence imposed following his non-jury trial and convictions for attempted involuntary deviate sexual intercourse (IDSI) and related offenses. Appellant contends that the trial court erred by limiting the scope of cross-examination. We affirm.

The trial court summarized the relevant facts and procedural history of this matter as follows:

> On May 6, 2021, Complainant G.G. moved into 3613 Hartel Avenue in Philadelphia, where three housemates already resided: [Appellant], his then-girlfriend Rachel Costello, and Robert Mihajlowitsch. All four residents smoked phencyclidine (PCP) at some point that day. Since G.G. had just moved in, all her belongings were piled on her bed, and she planned to sleep in Mr. Mihajlowitsch's room. While G.G. was lying down in Mr. Mihajlowitsch's room, watching a video on her phone, [Appellant] briefly entered the room and asked for a cigarette.

When [Appellant] returned to Mr. Mihajlowitsch's room a few minutes later, he pulled G.G.'s shirt down and attempted to lick her left nipple. Shortly after, [Appellant] hit her in the face. G.G. described the ensuing pain as stinging, and as if her face was on fire. She testified that her face turned red in the area where [Appellant] struck her. Next, [Appellant] grabbed a fistful of her hair on the right side of her head. G.G. forced him away. At some point, [Appellant] took off his clothes and threw them on the floor. Next, [Appellant] straddled G.G. over her upper torso, held his penis in his hand, and attempted to force his penis toward her mouth. G.G. testified that at no point did she consent to any physical contact. She testified that the sequence of events in Mr. Mihajlowitsch's bedroom occurred rapidly.

When G.G. freed herself, she ran downstairs, found Mr. Mihajlowitsch in the kitchen, and told him everything that had just happened, pointing out to him that her face was red and her hair was disheveled. Meanwhile, Ms. Costello woke up when [Appellant] entered their shared bedroom, and she was immediately confused about the fact that [Appellant] came into the room already naked. Ms. Costello left the room to investigate[] and found [Appellant's] clothes on the floor in Mr. Mihajlowitsch's room. Ms. Costello then "stormed" into the kitchen and confronted G.G. and Mr. Mihajlowitsch.

G.G. told Ms. Costello that [Appellant] tried to force himself on her. Ms. Costello noticed that G.G.'s face was red. Shortly after, Ms. Costello told [Appellant] to leave the house. That night, G.G. slept in Mr. Mihajlowitsch's room with Mr. Mihajlowitsch; they locked the door to keep [Appellant] out. G.G. woke up to Ms. Costello and [Appellant] arguing outside the home about [Appellant's] refusal to vacate the house. Ms. Costello testified that [Appellant] was trying to kick the door in. On May 7, 2022, Ms. Costello called [the] police at least once, and G.G. called police at least twice. Initially, G.G. did not disclose the sexual nature of the assault to police in her 911 calls or when police responded to the first 911 call. In G.G.'s second 911 call, she mentioned that [Appellant] beat her up. Ms. Costello testified that when police responded to the house the second time, police said that they could not remove [Appellant] if he did not do anything, and at that point, G.G. disclosed the attempted sexual assault. [Appellant] was then arrested outside of the residence. Both G.G. and Ms. Costello went to the local police station and provided detailed formal statements to the police.

Trial Ct. Op., 9/29/22, at 2-3 (citations omitted).

The Commonwealth charged Appellant with attempted rape by forcible compulsion, attempted IDSI by forcible compulsion, attempted sexual assault, attempted indecent assault by forcible compulsion, attempted indecent assault without consent, indecent exposure, false imprisonment, and simple assault.[1]

At trial, G.G. admitted that she had two prior convictions for retail theft and one prior conviction for conspiracy to commit retail theft.[2]  N.T. Trial, 2/23/22, at 35-36.

On cross-examination, the following exchange occurred:

[Appellant's counsel]: All right.  So let's talk about your word. Counsel already alluded to the fact that you have had multiple convictions for stealing stuff; right?

[G.G.]: Yes.

[Appellant's counsel]: You actually have an open case --

[The Commonwealth]: Objection.

[Appellant's counsel]: We can talk about it.

The [trial c]ourt: What's your objection?

---

[1] 18 Pa.C.S. §§ 901(a), 3121(a)(1); 901(a), 3123(a)(1); 901(a), 3124.1; 901(a), 3126(a)(2); 901(a), 3126(a)(1); 3127(a); 2903(a); and 2701(a)(1), respectively.

[2] Evidence of a witness's conviction for *crimen falsi*, a crime involving dishonesty or a false statement, is generally admissible to impeach the witness's credibility.  **See Commonwealth v. Hoover**, 107 A.3d 723, 730 (Pa. 2014); Pa.R.E. 609(a).

[The Commonwealth]: It's an open case, Your Honor.  She's not been convicted of this crime.

The [trial c]ourt: Sustained.

*Id.* at 45-46.  Appellant did not make a proffer as to why any pending criminal charges against G.G. were relevant.  Appellant's counsel then returned to questioning G.G. about her prior retail theft convictions.  *Id.* at 46-47.  Ultimately, the trial court found Appellant not guilty of attempted rape and guilty of all other charges.

On June 7, 2022, the trial court sentenced Appellant to an aggregate term of four years and six months to nine years of incarceration and a consecutive term of four years of probation.  The trial court did not find that Appellant was a sexually violent predator (SVP).  The trial court also ordered Appellant to register as a Tier III offender under the Sexual Offender Registration and Notification Act[3] (SORNA).

Appellant did not file any post-sentence motions, but he filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement.  The trial court issued a Rule 1925(a) opinion concluding that it erred in restricting Appellant's cross-examination of G.G. but that the error was harmless.

On appeal, Appellant raises the following issue:

Did not the trial court abuse its discretion and violate Appellant's right to confront witnesses when it denied him the opportunity to cross examine the Commonwealth's key witness regarding pending criminal matters and this error was not harmless?

---

[3] 42 Pa.C.S. §§ 9799.10-9799.41.

Appellant's Brief at 3.

Appellant argues that the trial court abused its discretion when it restricted Appellant's counsel from cross-examining G.G. about pending criminal charges against her. *Id.* at 11-22. Specifically, Appellant contends that his right to confrontation includes inquiring about whether a witness is biased in favor of the prosecution because that witness has outstanding criminal charges. *Id.* at 12-13. Appellant notes that the trial court has conceded that it erred by restricting his cross-examination of G.G. regarding any pending criminal charges against her. *Id.* at 13-14.

Appellant further argues that the trial court's restriction of his cross-examination of G.G. was not a harmless error because G.G.'s testimony regarding Appellant's conduct in the bedroom was uncorroborated and a conviction depended entirely on G.G.'s credibility. *Id.* at 15-16, 19, 21. Appellant claims that the trial court's conclusion that Costello's testimony corroborated G.G.'s testimony is erroneous because Costello was not present in the bedroom with Appellant and G.G., and Costello only testified regarding G.G.'s statements about what occurred in the bedroom. *Id.* at 19-20. Appellant concludes that the trial court's limitation of his cross-examination was not harmless because the evidence was not "so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict." *Id.* at 20 (quoting *Commonwealth v. Fulton*, 179 A.3d 475, 493 (Pa. 2018)).

The following principles govern our review. The right to cross-examine witnesses, although fundamental, is not absolute. ***Commonwealth v. Rosser***, 135 A.3d 1077, 1088 (Pa. Super. 2016) (*en banc*). "A trial court has discretion to determine both the scope and the permissible limits of cross-examination. The trial judge's exercise of judgment in setting those limits will not be reversed in the absence of a clear abuse of that discretion, or an error of law." ***Commonwealth v. Briggs***, 12 A.3d 291, 335 (Pa. 2011) (citations and quotation marks omitted).

> An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

***Commonwealth v. LeClair***, 236 A.3d 71, 78 (Pa. Super. 2020) (citation omitted). This Court "may affirm a decision of the trial court if there is any basis on the record to support the trial court's actions, even if we rely on a different basis." ***Commonwealth v. Moser***, 999 A.2d 602, 606 n.5 (Pa. Super. 2010) (citation omitted).

The Confrontation Clause of the Sixth Amendment of the United States Constitution provides a defendant with a constitutional right "to conduct cross-examination that reveals any motive that a witness may have to testify falsely." ***Commonwealth v. Bozyk***, 987 A.2d 753, 756 (Pa. Super. 2009); ***see also Commonwealth v. Gentile***, 640 A.2d 1309, 1313 (Pa. Super.

- 6 -

1994) (stating that "cross-examination directed toward revealing possible bias, interest or motive of a witness in testifying against the defendant is always relevant as discrediting the witness and affecting the weight of [her] testimony").

"A witness may be questioned about pending criminal charges because the witness may be tempted to help convict the defendant in order to obtain leniency on the charges that he currently faces." ***Bozyk***, 987 A.2d at 757 (citation omitted). However, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, and prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." ***Id.*** at 756 (citation omitted); ***see also Rosser***, 135 A.3d at 1088.

With respect to a trial court's authority to restrict the scope of cross-examination, our Supreme Court has explained:

> A trial judge's refusal to allow a line of questioning on cross-examination amounts to exclusion of evidence; preservation for appeal of an objection to the exclusion generally requires a formal proffer of the contents and relevancy of the excluded evidence. . . .
>
> Of course, the proffer of a defendant whose cross-examination has been restricted does not need to be extremely specific, for the obvious reason that the defendant cannot know exactly how the witness will respond, especially when the cross-examination is an attempt to show bias. Nevertheless, the proffer must at least be sufficient to establish that the cross-examination will likely reveal information nominally relevant to the proceeding. A simple assertion that cross-examination will reveal bias is not sufficient to establish a need for that cross-examination; **it is necessary**

- 7 -

**to demonstrate a relevant relationship between the expected testimony on cross-examination and the nature of the issue before the court.**

*Commonwealth v. Smyrnes*, 154 A.3d 741, 752-53 (Pa. 2017) (citation and footnote omitted, emphasis in original).

In *Smyrnes*, defense counsel attempted to cross-examine a witness about whether her abilities to think rationally and recall events are affected when she does not take her prescribed medications. *Id.* at 750-751. The Commonwealth objected and argued that defense counsel's questions should be limited to a specific time frame. *Id.* at 751. The trial court instructed defense counsel to confine his questions to the month when the murder occurred. *Id.* The witness subsequently testified that she clearly recalled the murder and the events surrounding it. *Id.*

On appeal, the defendant argued that the trial court erred by restricting the scope of his cross-examination. *Id.* at 750-51. The *Smyrnes* Court explained that defense counsel's original questions were "highly generalized and untethered to the time period addressed by [the witnesses'] testimony[.]" *Id.* at 752. Therefore, our Supreme Court concluded that "in light of defense counsel's failure to advise the trial court that he intended to attempt to confine his questioning according to the prescription medications in issue and any reasonably contemporaneous episodes of impairment," the trial court did not abuse its discretion in limiting the scope of the cross-examination. *Id.* at 753 (citation omitted); *see also Rosser*, 135 A.3d at 1089-90 (concluding that the trial court properly precluded the defendant's proposed cross-examination

of the victim where the defendant failed to provide any foundation for his question).

Finally, we note that even where the trial court makes an erroneous evidentiary ruling, "[i]f a trial error does not deprive the defendant of the fundamentals of a fair trial, his conviction will not be reversed." ***Commonwealth v. Wright***, 961 A.2d 119, 135 (Pa. 2008) (citations omitted). As our Supreme Court has stated, "[a] defendant is entitled to a fair trial but not a perfect one." ***Id.*** (citations omitted); ***see also Rosser***, 135 A.3d at 1088 (stating that if this Court determines that the trial court erred in limiting the defendant's right to cross-examination, this Court must determine "whether [the error] was harmless beyond a reasonable doubt; if so, reversal is not warranted" (citation omitted)).

> If a trial court commits an error, our Supreme Court has explained:
>
> Harmless error exists if the state proves either: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Fulton***, 179 A.3d at 493 (citations omitted and formatting altered).

Here, the trial court agreed with Appellant that it erred in restricting his cross-examination of G.G. Specifically, the trial court explained:

> During cross-examination of G.G., [Appellant's] counsel attempted to show G.G.'s character for being dishonest,

- 9 -

presumably to show her bias to testify favorably for the Commonwealth . . . .

\* \* \*

Since the credibility of this complainant's testimony was a vital part of the Commonwealth's case, [Appellant's] counsel's ability to show possible bias is particularly important. Here, the trial court should have allowed [Appellant's] counsel to explore, on cross-examination and during argument, the possibility that G.G. had a motive to testify favorably for the Commonwealth. [Appellant] should have been given the opportunity, under the right to confront all witnesses against him, to question G.G. regarding her potential bias due to her open criminal matter and use that potential bias to raise doubt in the factfinder's mind.

Trial Ct. Op. at 5-6 (some formatting altered).

However, the trial court concluded that Appellant was not entitled to relief because its error in restricting Appellant's cross-examination of G.G. was harmless. *See id.* at 6-9. Specifically, the trial court explained that the exclusion of testimony about G.G.'s pending criminal charges did not affect the trial court's assessment of G.G.'s credibility and that Costello's testimony corroborated G.G.'s account. *See id.* at 7-9.

Based on our review of the record, we disagree with the trial court's conclusion that it erred in restricting Appellant's cross-examination of G.G. The record reflects that after the Commonwealth objected to Appellant's counsel's question about whether G.G. had any pending criminal charges, Appellant's counsel responded "[w]e can talk about it[,]" and did not provide any explanation concerning the purpose of the question. *See* N.T. Trial, 2/23/22, at 46. As previously stated, a defendant may cross-examine a witness about any pending criminal charges against the witness to establish

the witness's potential bias towards the Commonwealth because witness desires leniency in exchange for cooperating with the prosecution. ***See Bozyk***, 987 A.2d at 757; ***Gentile***, 640 A.2d at 1313. However, because Appellant failed to proffer that the expected testimony would likely reveal G.G.'s bias towards the Commonwealth and that bias was relevant, the trial court did not abuse its discretion by limiting Appellant's cross-examination of G.G. ***See Smyrnes***, 154 A.3d at 752-53; ***Rosser***, 135 A.3d at 1089-90. For these reasons, Appellant is not entitled to relief. Therefore, we affirm the trial court's ruling, albeit on a different basis. ***See Moser***, 999 A.2d at 606 n.5.

Judgment of sentence affirmed.

Judge Olson concurs in the result.

Judge McLaughlin concurs in the result.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/10/2023

- 11 -