J-A11008-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
KAELEN TIMOTHY O'CONNOR :
:
Appellant : No. 184 WDA 2022

Appeal from the Judgment of Sentence Entered September 30, 2019
In the Court of Common Pleas of Allegheny County
Criminal Division at No:  CP-02-CR-0009040-2018

BEFORE:   BENDER, P.J.E., STABILE, J., and PELLEGRINI, J.[*]

MEMORANDUM BY STABILE, J.:                **FILED: December 28, 2023**

Appellant, Kaelen Timothy O'Connor, is a former City of Pittsburgh police officer who seeks review of a judgment of sentence entered by the Court of Common Pleas of Allegheny County (trial court).  Following a jury trial, Appellant was found guilty of obstructing administration of law (18 Pa.C.S.A. § 5101) and hindering apprehension and prosecution (18 Pa.C.S.A. § 5105(a)(3)).  He was sentenced to one year of probation as to each count, to be served consecutively.  Appellant now asserts that the evidence was legally insufficient, and that, alternatively, he is entitled to a new trial because the presiding judge visibly exhibited to the jury his disapproval of Appellant's

_____

[*] Retired Senior Judge assigned to the Superior Court.

testimony. For the following reasons, we remand the case for an evidentiary hearing so that the judicial misconduct issue can be further developed.

This case arises from a road-rage incident that took place in or around a Pittsburgh school zone on May 3, 2017. Jesse Smith, a Michigan resident, was driving his vehicle when he encountered a motorist in a black Mercedes, Robert Kramer, who at that time was a City of Pittsburgh police officer. While stopped alongside Smith's vehicle, Kramer allegedly aimed a handgun in Smith's direction. Smith demanded that Kramer pull over and exit his car to be confronted, but Kramer instead drove away.

By keeping his own vehicle stopped, Smith was able to observe a partial license plate number of the Mercedes. He then called 911 at about 3:36 p.m. and reported what had happened. In response, Appellant and Officer Troy Signorella arrived at the scene in separate patrol cars to speak with Smith. During his interview with Appellant, Smith noticed Appellant searching through his patrol car's computer system in an attempt to locate the Mercedes using the partial plate that Smith had provided. Smith heard Appellant announce to Officer Signorella that he was able to retrieve the full license plate number of the Mercedes, as well as the name and address of the driver associated with the vehicle.

Officer Signorella asked Appellant to call him on his cellular phone. Appellant stepped away from Smith to make the call from behind his vehicle. Smith could not hear the conversation, but he could see the officers speaking

to each other on their cell phones. Once the officers had finished their discussion, Appellant walked back to Smith and advised that nothing further could be done at that time. *See* N.T. Trial, 5/14/2019, at 71.

Although the two officers told Smith that detectives would be in touch, Smith did not hear back from Appellant, Officer Signorella, or any other officers for several weeks. It took almost one month from the day of the incident for Smith himself to contact an officer (Detective Dawn Mercurio) who was able to address his complaint and retrieve the investigative report of the incident prepared by Appellant.

The report indicated that the case had not yet been "cleared" because further investigation was needed. The name, address, and phone number of Jesse Smith was correctly recorded, as was Smith's general account of the incident. Notably, however, the report included a license plate number that had a missing letter and an incorrect numeral. It also made no mention of Appellant, much less the fact that he was a police officer.

Detective Mercurio was able to locate the black Mercedes, and the identity of Kramer as the owner, in a police database. But it was only possible for her to do so because Smith provided her with the full and correct plate number he had received from Appellant. *See* N.T. Trial, 5/14/2019, at 142.

After her call with Smith, Detective Mercurio contacted Kramer directly and confirmed with him that he had been involved in a traffic incident the prior month. At that point, Detective Mercurio referred the case to the Office of

Professional Standards, which was responsible for investigating complaints against City of Pittsburgh police officers. *See* N.T. Trial, 5/15/2019, at 151.

The case was assigned to Detective Edward Green, who reviewed all of the recorded communications associated with the road-rage incident. Detective Green discovered several irregularities in how events unfolded after Smith's initial call to 911. Of significance here, Detective Green noted that Officer Signorella had received the correct plate number of Kramer's vehicle, and at 3:53 p.m. he dispatched several units to the home address of Kramer's parents. Only 30 minutes after doing so, however, Officer Signorella contacted the dispatched units to cancel his request and halt their investigation without having contacted Kramer. *See id*., at 170-71.

In between Smith's initial 911 call at 3:36 p.m. and Officer Signorella's directive for the dispatched units to disperse at 3:53 p.m., there were extensive communications made by and between Appellant, Officer Signorella, one of the dispatched units (Officer Ray Toomey), and Kramer:

- (3:36 p.m.) Smith called 911;

- (3:49 p.m.) Officer Toomey sent a police radio transmission to Officer Signorella asking him to call his cell phone;

- (3:50 p.m.) Officer Signorella initiated a cell phone call with Officer Toomey lasting over two minutes;

- (3:52 p.m.) Officer Tommey initiated a cell phone call with Kramer that was not answered;

- (3:53 p.m.) Dispatched units sent a police radio transmission to report that they had arrived at the home of Kramer's parents and no one was present;

- (3:53 p.m.) Appellant initiated a cell phone call with Officer Signorella lasting over a minute;

- (3:53 p.m.) Dispatched units sent a police radio transmission to report that they were no longer needed at Kramer's address;

- (3:54 p.m.) Kramer returned a cell phone call to Officer Toomey and spoke with him for almost a minute;

- (3:58 p.m.) Officer Signorella initiated a cell phone call to Appellant lasting about half a minute;

- (4:05 p.m.) Appellant initiated a call to Kramer lasting three minutes, by which time the dispatched units had already dispersed from the location of Kramer's parents' home.

*See id*., at 156-73.

When Appellant submitted his investigative report a day later on May 4, 2017, it included no timestamps, and all of the above communications were omitted. As was the fact that Appellant had used another officer's login information to search the plate number of Kramer's vehicle. *See id*., at 180-81, 191. Perhaps most significantly, it also came to light during Detective Green's investigation that in 2013, Appellant was in the same police academy class as both Kramer and Officer Toomey. *See id*., at 175.[1]

_____

[1] Kramer testified at Appellant's trial concerning the content of his cell phone calls with Officer Toomey and Appellant, both of whom Appellant admitted to knowing personally from their time at the police academy. Kramer recalled telling them that no road-rage incident had occurred. Similarly, a month later, when he received a call from Detective Mercurio, he recalled telling her that the alleged handgun pointed at Smith was really a cell phone that Kramer had been holding as Smith drove past him. *See id*., N.T. Trial, 5/15/2019, at 223-24, 230-32.

At Appellant's subsequent trial, he testified that he had not attempted to conceal Kramer's role in an alleged road-rage incident with Smith. He found Smith to be an unreliable witness, and his conversation with Kramer convinced Appellant that he was telling the truth in stating that he not been involved in a gun-related dispute on the day in question. Kramer's name was omitted from the investigative report because Appellant believed including it in a public record would pose a safety risk to Kramer. *See id*., at 278.

Appellant claimed that he had been using his former partner's login information when accessing the police database on May 3, 2017 because two weeks earlier, technical support had incorrectly reset his username and he could not otherwise use the system. It was also suggested by Appellant that, by marking the investigation as not yet cleared in his report, he proved that there was no intent to impede the investigation since clearing the case would have halted any further inquiry by detectives.

Appellant was found guilty and sentenced as outlined above. He did not file post-sentence motions or a direct appeal. A petition for post-conviction relief was filed on October 9, 2020. An amended petition was filed on February 23, 2021, and a supplemental petition was filed on March 23, 2021.

In his petitions, Appellant contended that his trial counsel was ineffective in failing to file post-sentence motions, failing to request jury instructions concerning character evidence, and failing to ask Kramer

exculpatory questions about the outcome of Kramer's own criminal trial.[2]

Appellant's final postconviction claim concerned the conduct of the presiding judge at his trial, the Honorable Mark V. Tranquilli. Appellant asserted that after the trial had concluded, he learned from two witnesses (Kramer's sister and brother-in-law) that Judge Tranquilli "was making disparaging faces, rolling his eyes, and scoffing during [Appellant's] testimony[.]" Amended Petition, 2/23/2021, at 11. Attached certifications from both witnesses included identical language to that effect. Appellant and the two witnesses also attested to the fact that the judge's alleged conduct was not immediately apparent to Appellant and his counsel because they were focused only on each other as questions were asked and answered during his examination.

Appellant presented this issue as a claim of after-discovered evidence.[3] Appellant's claim was supplemented by undisputed evidence that Judge Tranquilli had engaged in egregious misconduct in many other cases, resulting in his suspension and resignation from the bench, as well as his substitution in the present matter by the Honorable Bruce R. Beemer.

_____

[2] In 2017, a jury found Kramer not guilty as to criminal charges stemming from the incident with Jesse Smith.

[3] Under subsection 9543(a)(2)(vi) of the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, relief is afforded where exculpatory evidence that was unavailable at the time of trial "has subsequently become available and would have changed the outcome of the trial if it had been introduced."

An Answer to Appellant's postconviction petitions was filed by the Commonwealth on April 6, 2021. The Commonwealth argued that Appellant's ineffectiveness claims had no merit and that his judicial misconduct claim was both undeveloped and not cognizable under the PCRA. *See* Commonwealth's Answer, 4/6/2021, at 11-14. As to the requested reinstatement of Appellant's post-sentence and direct appeal rights, the Commonwealth made no objection. *See id*., at 5. Appellant's post-sentence and direct appeal rights were reinstated on September 14, 2021, and all other relief was denied.

Pursuant to the reinstatement of his rights, Appellant timely filed post-sentence motions *nunc pro tunc* on September 24, 2021. He again asserted that the evidence was insufficient, that the verdict was contrary to the weight of the evidence, and that a new trial was needed to remedy the misconduct of Judge Tranquilli.[4] The post-sentence motion was summarily denied on January 7, 2022.

Appellant timely appealed and filed a 1925(b) statement of errors which included three issues:

> 1. Whether there was insufficient evidence to convict Appellant of Obstructing the Administration of Law as the Commonwealth failed to prove beyond a reasonable doubt that Appellant intentionally obstructed, impaired, or perverted the administration of law by breach of official duty[.]
>
> 2. Whether there was insufficient evidence to convict Appellant of Hindering Apprehension or Prosecution as the Commonwealth

---

[4] The misconduct issue was presented in the post-sentence motion as a claim of after-discovered evidence pursuant to Pa.R.Crim.P. 720(C).

- 8 -

failed to prove beyond a reasonable doubt that Appellant intended to hinder the apprehension, prosecution, conviction or punishment of Robert Kramer by tampering with a document or other source of information[.]

3. Whether Appellant is entitled to a new trial after newly discovered evidence has come to light that people in the gallery witnessed former Judge Mark Tranquilli making disgusted facial expressions, scoffing, and rolling his eyes to the jury while Appellant was testifying[.]

Appellant's 1925(b) Statement of Errors, 3/8/2022, at 1.

The trial court (Judge Beemer) filed a 1925(a) opinion, finding that Appellant's sufficiency claims were waived for purposes of appellate review because Appellant did not specify the elements of his two convictions which he believed were not proven. *See* Trial Court's 1925(a) Opinion, 6/7/2022, at 14-15. With respect to the judicial misconduct claim, the trial court found that the issue was timely raised in Appellant's post-sentence motion. *See id*., at 15-16. The trial court found, however, that the characterization of the trial judge's behavior by two witnesses was subjective, and the claim was "completely undeveloped" due to the lack of evidence as to whether, and to what extent, the jury was affected by any misconduct it may have observed. *Id*., at 16.

The trial court determined that it had to be presumed that the jury had followed instructions on how to properly consider the evidence and render a verdict. Moreover, Judge Tranquilli had specifically instructed the jury at the conclusion of the trial not to consider or lend any weight to its perceived notion of how he viewed the case:

- 9 -

Now, I have not attempted to indicate my opinion concerning the weight you should give to the evidence or to any part of it, and I do not want you to think that I have. If during the trial I exhibited what you felt to be annoyance or displeasure towards any witness or lawyer, or if I made any comment or displayed any facial expression, you are not to assume that I am attempting to lead you to render a particular verdict because I am not.

*Id*., at 17 (quoting N.T. Trial, 5/16/2019, at 348-49).

In Appellant's brief, he has reiterated the three issues raised in his 1925(b) statement. He asserts that his sufficiency claims were not waived because he had identified the specific element of each offense that he was challenging. As to the obstruction conviction, Appellant refers to language in his 1925(b) statement identifying the element of "breach of official duty." As to the hindering prosecution conviction, Appellant refers to language in the 1925(b) statement identifying the element of "tampering with a document or other source of information." Appellant's Brief, at 16, 24.

Regarding the judicial misconduct claim, Appellant maintained that it was sufficiently developed at the present stage because he had only learned of Judge Tranquilli's behavior after the trial had already concluded. Appellant argues that the post-trial production of his two witnesses and their proffered testimony should have resulted in an evidentiary hearing at which further evidence could be adduced. *See* Appellant's Brief, at 29.

We first consider Appellant's sufficiency of the evidence claims. When addressing whether evidence is sufficient to sustain a conviction, our standard of review is as follows:

[W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence

- 10 -

to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Bullick****,* 830 A.2d 998, 1000 (Pa. Super. 2003).

"[W]hen challenging the sufficiency of the evidence on appeal, a court-ordered 1925(b) statement 'must specify the element or elements upon which the evidence was insufficient' in order to preserve the issue for appeal." ***Commonwealth v. Gibbs***, 981 A.2d 274, 281 (Pa. Super. 2009). Failing to do so will result in a waiver of the claim. ***See id.***

In the present case, we find that Appellant adequately preserved his sufficiency claims for appellate review. While he could have provided more detail about the elements of the subject offenses he was challenging, he indicated in his 1925(b) statement that he was disputing the sufficiency of the evidence as to the "breach" element of obstruction and the "tampering" element of hindering prosecution. Regardless, Appellant's preservation of his sufficiency claims is ultimately of no avail because the claims lack substantive merit.

- 11 -

The evidence was legally sufficient for the jury to convict Appellant of obstruction. This offense occurs when a person "intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act[.]" 18 Pa.C.S.A. § 5101. "[T]he crime consists of two elements: 1) an intent to obstruct the administration of law; and 2) an act of 'affirmative interference with governmental functions.'" *Commonwealth v. Harper*, 403 A.2d 536, 538 (Pa. 1979).

Although "breach of an official duty" is undefined in section 5101, we have construed the term as being synonymous with the affirmative interference element. *See Commonwealth v. Gentile*, 640 A.2d 1309, 1312 (Pa. Super. 1994) (holding that "breaches of official duty are included within the types of conduct described as 'affirmative interference[s] with governmental functions.'") (Citation omitted).

The Commonwealth's evidence satisfied all elements of the offense, including the disputed element of breach of an official duty. Specifically, the evidence showed that Appellant thwarted an investigation into potential crimes committed by Kramer by omitting from a report Kramer's personal information and the correct license plate number of the vehicle Kramer had been driving.

Appellant's affirmative interference was also shown by his failure to complete a daily activity report for the date of the road-rage incident; his use

- 12 -

of another officer's login credentials to look up Kramer's information; and his undisclosed familiarity with Kramer as a graduate of the same police academy class. The numerous unreported communications calls between Appellant, Kramer, and other officers during what was supposed to be an objective inquiry into Smith's allegations further bolstered the Commonwealth's evidence that Appellant breached his official duty as a police officer by actively impeding an investigation.

The evidence also was sufficient to support the jury's verdict on the count of hindering apprehension or prosecution. This crime occurs when a person, "with intent to hinder the apprehension, prosecution, conviction or punishment of another for crime . . . conceals or destroys evidence of the crime, or tampers with a . . . document or other source of information, regardless of its admissibility in evidence[.]" 18 Pa.C.S.A. § 5101(a)(3).

At trial, the evidence established that Appellant's omissions from his investigative report constituted an intentional concealment of Kramer's identity, which was carried out to help Kramer evade "apprehension, prosecution, conviction or punishment" for crimes committed in a road-rage incident. The inclusion of an incorrect license plate number, and the omission of Kramer's identity as the driver of the Mercedes, clearly constituted tampering with an investigative report, so there was sufficient evidence to prove that disputed element beyond a reasonable doubt. The jury was free to disbelieve or disregard Appellant's justifications for omitting that critical

information.  ***See Commonwealth v. Griscavage***, 517 A.2d 1256, 1257 (Pa. 1986) ("[T]he trier of fact, while passing upon the credibility of witnesses . . . is free to believe all, part, or none of the evidence.").

Finally, we turn to Appellant's claim that he was prejudiced by Judge Tranquilli's misconduct during Appellant's trial testimony.  Appellant first raised this issue in a PCRA petition as a claim of after-discovered evidence.  ***See*** 42 Pa.C.S.A. §§ 9543(a)(2)(vi).  He also had asserted claims of ineffective assistance of counsel which are not now before us.

The result of the postconviction proceedings was the reinstatement of Appellant's post-sentence and direct appeal rights.  Once these rights were reinstated, Appellant filed a post-sentence motion, *nunc pro tunc*, alleging that, despite the exercise of due diligence, he learned after the trial had concluded that Judge Tranquilli behaved inappropriately during Appellant's testimony.  Appellant argued that this misconduct prejudiced him because he was found guilty due to Judge Tranquilli's influence instead of the evidence presented at trial.  ***See*** Pa.R.Crim.P. 720(C).[5]

---

[5] Under Pa.R.Crim.P. 720(C), a defendant may seek a new trial in a post-sentence motion based on evidence discovered after the conclusion of the trial.  Relief is warranted if the after-discovered evidence meets a four-part test:

> (1) the evidence could not have been obtained before the conclusion of the trial by reasonable diligence; (2) the evidence is not merely corroborative or cumulative; (3) the evidence will not

*(Footnote Continued Next Page)*

Both the trial court and the Commonwealth stress that Appellant's claim is undeveloped, as the current record does not substantiate the alleged observations by Appellant's two witnesses regarding Judge Tranquilli's misconduct. Nor does the record firmly reflect whether the jury ever witnessed, or was influenced by, that behavior. The Commonwealth also points to Judge Tranquilli's instruction to the jury to disregard any perceived opinion he might have exhibited during the trial, and "[t]he presumption in our law is that the jury has followed instructions." *Commonwealth v. Baker*, 614 A.2d 663, 672 (Pa. 1992); *see also Commonwealth v. O'Hannon*, 732 A.2d 1193, 1196 (Pa. 1999) ("[A]bsent evidence to the contrary, the jury is presumed to have followed the trial court's instructions.").

Although the record is indeed undeveloped, we agree with Appellant that the trial court erred in summarily denying the post-sentence motion. By its very nature, Appellant's claim of after-discovered evidence was unavoidably lacking in development because Appellant did not learn of the new evidence until after the trial had already concluded. The record contains no images of Judge Tranquilli at the time of Appellant's cross-examination, so anything short of an evidentiary hearing would make it impossible for a court to assess the merit of the claim.

_____

be used solely for purposes of impeachment; and (4) the evidence is of such a nature and character that a different outcome is likely.

*Commonwealth v. Rivera*, 939 A,2d 355, 359 (Pa. Super. 2007).

- 15 -

Additionally, Judge Tranquilli's well-documented history of highly inappropriate behavior arguably corroborates the certified statements of Appellant's two witnesses. The peculiar instruction Judge Tranquilli gave about disregarding his apparent "annoyance," "displeasure," and "facial expressions" certainly verifies that *something* improper may have been visible to the jury in the present matter. Taken together, the giving of this instruction makes it more likely, not less likely, that Judge Tranquilli may have compromised the jury's ability to consider the evidence objectively.

Accordingly, the trial court erred in denying the judicial conduct claim in Appellant's post-sentence motion. In order for the trial court to consider the merit of Appellant's post-sentence motion, *nunc pro tunc*, and to perfect the record on appeal, further proceedings are required. We therefore vacate the order denying Appellant's post-sentence motion and remand the case for an evidentiary hearing at which Appellant will have the opportunity to demonstrate the extent to which any improper conduct by Judge Tranquilli influenced the jury in this case. Further relief may then be granted if needed.

Order of January 7, 2023 denying post-sentence motion vacated. Case remanded for evidentiary hearing. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

12/28/2023